IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br>    Plaintiff,<br><br>v.<br><br>NATIONAL UNITED GROUP, LLC,<br>et al.,<br>    Defendants. | §<br>§<br>§<br>§   CIVIL ACTION NO. 3:21-CV-00071-DB<br>§<br>§<br>§<br>§<br>§ |

### NATIONAL UNITED GROUP, LLC'S MOTION TO DISMISS
### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

    National United Group, LLC ("**National United**"), by and through its undersigned counsel and pursuant to FED. R. CIV. P. 12(b)(6), hereby moves to dismiss Plaintiff Brandon Callier's first amended complaint with prejudice, and in support states the following:

#### I.     INTRODUCTION

    1.    Plaintiff Brandon Callier ("**Callier**") has made a cottage industry out of filing Telephone Consumer Protection Act ("**TCPA**") lawsuits. The electronic docket for the Western District of Texas reflects over twenty TCPA cases that Callier has filed in just over a year. Callier sues companies large and small, with the goal of squeezing settlements from those companies as quickly as possible.

    2.    Callier's complaints are often scattershot affairs, where little remains after the legal conclusions are removed. This type of defective pleading puts a serious strain on small companies like National United, which have done nothing wrong but are forced to spend significant amounts of time and money defending baseless claims.

3.This case is particularly troublesome because it involves the purchase of federally-subsidized insurance policies through the Affordable Care Act. Callier admits in his amended complaint that he and some of his accomplices purchased "a health insurance policy from the Defendants in order to get concrete proof of the origin of the calls in an attempt to get the harassing calls to stop." Am. Compl. ¶¶ 54, 63, 77. In other words, Callier purchased a federally-subsidized insurance policy for the sole purpose of finding out who to sue. It seems reckless—where taxpayers foot part of the bill and where applicants are required to verify income, coverage status and other information to qualify—for Callier to use these subsidized policies in this way. But such is the reality Callier has created. Ultimately, taking his complaint at face value, the claims against National United should be dismissed for several reasons.

4.First, in Count I, Callier alleges that Defendants violated the TCPA's prohibition against phone calls to residential phone lines "using an artificial or pre-recorded voice" to deliver a message. 47 U.S.C. § 227(b)(1)(B). Yet, for the one call in Callier's complaint that seems to implicate National United, Callier admits that he received a **live** voice call from an actual agent. This sinks the claim, as Section 227(b)(1)(B) neither applies to nor prohibits live voice calls. Based on Callier's own allegations, National United did not violate the TCPA.

5.Second, Callier also cites to Section 227(b)(1)(A)(iii) of the TCPA in Count I, which compels National United to explain that Section and state why it doesn't apply. Section 227(b)(1)(A)(iii) of the TCPA has nothing to do with artificial and prerecorded voice calls. That section applies to phone calls made to cellular telephones using an "automatic telephone dialing system" or "ATDS." Callier does not allege that National United used an ATDS to call him, nor does he plausibly allege that National United used an ATDS to make any of the alleged calls that he supposedly received. A claim under Section 227(b)(1)(A)(iii) simply doesn't work.

6. Third, Count II alleges a claim under the TCPA's corresponding regulations, specifically 47 C.F.R. § 64.1200(d), which requires telemarketers to maintain an internal do-not-call list along with other certain policies and training programs for employees. Callier's complaint does not contain any allegations pertaining to National United's internal policies or procedures. The claim is lacking any substance at all and cannot survive a motion to dismiss under Fifth Circuit standards.

7. Fourth, to the extent Callier intends to hold National United liable based on a theory of vicarious liability, he fails in all respects to connect the dots between National United and any of the other defendants named in the complaint. He doesn't allege contractual relationships, and he doesn't allege anything that would raise any type of agency relationship or ratification beyond mere legal conclusions. The allegations for vicarious liability wouldn't pass muster under the most liberal pleading standards. For these and other reasons, Callier's first amended complaint should be dismissed with prejudice.

## II. BACKGROUND AND ALLEGATIONS

8. Callier has very little to say about National United. Indeed, while the complaint contains 168 total allegations, only five of those allegations implicate National United. Otherwise, Callier spends the bulk of his complaint alleging calls that he received and conversations he or his alleged accomplices had with various representatives from some of the other named defendants. Am. Compl. ¶¶ 40-70.

9. Importantly, Callier alleges and admits that he purchased an insurance policy "from the Defendants" in October 2020. *Id.* ¶¶ 53-57. He also alleges and admits that he continued to receive calls "from the defendants despite having already purchased an insurance policy from

3

Defendants." *Id.* ¶ 60. Taking these allegations as true, an established business relationship existed between Callier and "Defendants" starting in, at least, October 2020.

10. Callier next alleges that on December 15, 2020 he received a call from phone number 210-577-5511, during which he and his accomplice "Barbara Rios" spoke with a live person who told Callier and Ms. Rios that she would hang up and call back from a different number, "so you can talk to an agent." *Id.* ¶¶ 71-72. Callier then alleges that the person hung up and that Callier immediately received "a follow-up phone call from phone number 786-650-1617" and that he spoke with a live agent about health insurance. *Id.* ¶ 73.[1] Callier alleges that phone number 786-650-1617 belongs to National United. *Id.* ¶ 74.

11. This is the extent of the allegations pertaining to National United. Of note, Callier further alleges that all the automated pre-recorded calls were from Texas area codes, unlike the call he supposedly received from National United. *Id.* ¶ 93. Callier also includes allegations about certain individual defendants, and how those individual defendants "control" or "dominate" the larger company defendants. *See id.* ¶¶ 86-93. Significantly, National United is not named anywhere in those allegations. *Id*.

12. From that point on, Callier lumps the defendants together and refers to them collectively as "Defendants" and concludes that all of them somehow worked in concert for their "sales efforts." *E.g.*, *id.* ¶ 127. In fact, Callier's allegations, separated into sections, pertaining to agency, *id.* ¶¶ 113-116, actual authority, *id.* ¶¶ 117-124, apparent authority, *id.* ¶¶ 125-129,

---

[1] National United's records reflect that it never called Callier or Callier's phone number, however for purposes of this Motion to Dismiss, such allegations, however misguided, must be accepted as true. *E.g.*, *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009) (explaining that at the motion to dismiss stage the court must accept a plaintiff's allegations as true).

ratification, *id*. ¶¶ 130-135, and joint enterprise, *id.* ¶¶ 136-142, are comprised entirely of threadbare legal conclusions. Callier employs legalese throughout those sections and continues to lump defendants together, while weaving into those sections general points of law without explaining how the defendants actually worked together or ratified each other's conduct. In reality, National United did not work with any of the named defendants, but of course we're stuck with Callier's conclusory allegations at this point in the proceedings.

### III.   ARGUMENT

**A. Legal Standards: Even assuming Callier's allegations are true (they are not) for purposes of a Rule 12(b)(6) motion, Callier either has pleaded himself out of Court or has failed to state a claim.**

13.     To survive a Rule 12(b)(6) motion, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

14.     In the Fifth Circuit, while pleadings by *pro se* litigants like Callier are construed liberally, they "must still comply with the court rules of procedural and substantive law." *McCarrell v. Offers.com LLC*, 2019 WL 3220009, at *2 (W.D. Tex. July 16, 2019). Indeed, the Fifth Circuit has explained that whether a plaintiff is *pro se* or represented by counsel, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

**B. Count I: Callier's claim under Section 227(b)(1)(B) fails because Callier alleges he received a live phone call from National United, not a call using a pre-recorded or artificial voice.**

15.     Count I alleges a violation of the TCPA's pre-recorded voice calls provisions. Those provisions make it unlawful for any person to initiate a telephone call to a residential phone subscriber "using an artificial or prerecorded voice to deliver a message without prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B). Callier admitted in his amended complaint that a live agent called him to immediately follow-up from a call that Callier previously received. Am. Compl. ¶¶ 73-74. According to Callier, then, the call was an immediate effort to make a sale, and it came from a live agent.

16.     Confirming this is the allegation that "each and every" prerecorded and artificial voice call that Callier received came from Texas area codes. *Id.* ¶¶ 42, 93. Remember that the alleged call from National United used a Florida area code ("786"), making it unique as a live call and differentiating it from the pre-recorded calls Callier allegedly received. *Id.* ¶ 74. That's the end of Callier's story for National United. Since the TCPA's prerecorded voice call provisions do not apply to live voice calls, Count I must be dismissed. And it must be dismissed with prejudice, as this is not something Callier can fix or something that Callier can artfully address with another chance to amend. *See Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *5 (D. Conn. May 6, 2020) (dismissing claims under 47 U.S.C. 227(b) with prejudice in part because "[t]here is no allegation that [sic] of a pre-recorded voice or automatic message"); *see also Chambers v. Nationwide Mut. Ins. Co.*, 2020 WL 2475354, at *3 (N.D. Ohio May 13, 2020) (dismissing prerecorded call claims because plaintiff failed to provide "factual detail demonstrating that any ATDS equipment or prerecorded messages were used."); *Despot v. Allied Interstate, Inc.*, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016) (same); *Trumper v. GE Capital Retail Bank*, 79 F.

Supp. 3d 511, 513 (D.N.J. 2014) (dismissing amended complaint with prejudice because "it says nothing about the calls [the plaintiff] received . . . [and] provides no factual allegations suggesting that that the voice on the other end of the line was prerecorded").

    **C. Count I: To the extent Callier is attempting to state a claim under the TCPA's autodialer provisions, Section 227(b)(1)(A)(iii), that Section is not implicated because Callier fails to allege that National United used an ATDS to make the call.**

    17.    Count I should also be dismissed to the extent Callier is trying to hold National United liable under the TCPA's autodialer provisions. It's not quite clear whether Callier is raising the TCPA's autodialer provisions, except that Callier cites the autodialer provisions in Count I. (Am. Compl. ¶ 154.) Perhaps the citation was leftover from one of Callier's stock complaints and he forgot to delete it. Either way, in an abundance of caution, we'll address it.

    18.    The TCPA's autodialer provisions prohibit non-consensual calls to cellular telephones using an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii). Recently the United States Supreme Court reviewed Congress' definition of ATDS and significantly limited how it applies to modern calling systems. The Supreme Court held that for a caller to implicate the TCPA's autodialer provisions, the caller's dialing system must use a random or sequential number generator to produce numbers to be called. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

    19.    Here, Callier does not allege that National United used an ATDS, nor does he allege that National United called him using a system that dialed numbers with a random or sequential number generator. This makes sense, as it's become increasingly difficult for plaintiffs to establish claims under the TCPA's autodialer provisions after the Supreme Court's decision in *Duguid*, and this case is no different. *See*, *e.g.*, *Hufnus v. Donotpay, Inc.*, 2021 WL 2585488, at *2 (N.D. Cal. June 24, 2021) (granting motion to dismiss where calling system did not qualify as an ATDS after Supreme Court's recent interpretation of the definition); *Watts v. Emergency Twenty Four, Inc.*,

No. 20-cv-1820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (dismissing TCPA claim where allegations ". . . do not support an inference that [the calling system in question] is an ATDS under the interpretation set forth in *Duguid*."); *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 WL 2144671, at *6 (E.D. Pa. May 26, 2021) (same). Accordingly, to the extent Callier is seeking to hold National United liable under the TCPA's autodialer provisions, Count I should be dismissed with prejudice because there are zero allegations to support the claim, much less any allegations to raise a plausible inference that an ATDS was used for any of the calls that Callier received.

    **D. Count II: Callier's claim under 47 C.F.R. § 64.1200(d) should be dismissed because this Section does not apply to cell phones, because Callier alleges only legal conclusions to support the claim, and because Callier's allegations show that an established business relationship existed at the time National United allegedly called him.**

    20.    Callier is also attempting to hold National United liable under the TCPA's implementing regulations, namely Section 64.1200(d). That Section states:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

That Section goes on and includes certain "minimum standards" that companies must follow when instituting the procedures mentioned in the Section, including employee training, written policies, recordings and other standards. *Id.* § 64.1200(d)(1)-(7). Regardless of the listed requirements, Callier cannot state a claim as a matter of law.

    21.    Callier seems to forget that this regulation applies only to "residential telephone subscribers" and does not apply to cell phones. Just a few months ago, one court in the Western District of Texas dismissed a claim under Section 64.1200(d) in another case that Callier filed.

*Callier v. Greensky, Inc.*, No. EP-20-CV-00304, 2021 WL 2688622, at *5-*6 (W.D. Tex. May 10, 2021) (Cardone, J.). The *Greensky* decision is instructive. As in *Greensky*, here Callier alleges that the calls at issue were placed to his cell phone, not a residential landline, which justifies a dismissal with prejudice. *Id.* at *6 (dismissing claim with prejudice and explaining "Plaintiff does not cite— and the Court is not aware of—any authority that has found § 64.1200(d)(1) applicable to cellphones."); *see also Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and recommendation adopted*, 2019 WL 2524737 (E.D. Tex. June 19, 2019) (citing cases).

22.   To the extent this Court disagrees and finds Section 64.1200(d) applicable to cell phones, Count II suffers other problems as well. With respect to National United, there are no allegations whatsoever pertaining to National United's internal policies and procedures. In fact, there are no allegations even stating that Callier requested to see National United's policies or stating that Callier asked anyone from National United whether it had instituted the policies listed in Section 64.1200(d). These are not facts the Court can simply assume. As it turns out, Count II is comprised entirely of the type of legal conclusions that the Supreme Court in *Iqbal* tried to curb. 556 U.S. at 678. Count II should be dismissed for this reason also.

23.   And if that's not enough, there's another, alternative reason Count II should be dismissed. Section 64.1200(d) contains an exemption for calls made pursuant to an "established business relationship" or "EBR" because, according to the regulations, calls made pursuant to an EBR do not constitute "telemarketing." The regulations define "telemarketing" and "telephone solicitations" similarly. Both are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 C.F.R. §§ 64.1200(f)(13), (f)(15). The Regulations

9

further clarify in Section (f)(15) that telephone solicitations "do not include a call or message . . . **(ii) [t]o any person with whom the caller has an established business relationship**." *Id.* § 64.1200(f)(15) (emphasis added). The regulations also define EBR to mean a relationship formed by two-way communications between a caller and a call recipient, assuming the call takes place after a call recipient purchases products or after the call recipient makes inquiries about the caller's products or services.

24.     Here, Callier alleges the existence of an EBR. Callier alleges that he purchased an insurance policy from "defendants," which would include National United, in October 2020. Am. Compl. ¶¶ 53-54, 60. Callier further alleges that he and Ms. Rios spoke with an agent and agreed to a follow-up phone call *id.* ¶ 72, which, according to Callier, came from National United in December 2020 *id.* ¶¶ 71-73. Keep in mind that Callier's main objective during all these interactions is to find out information about the entities behind the calls so he can sue them. Thus, he and his accomplices feign interest and inquire about the caller's products or services. They even purchase the products or services to gather more information. *Id.* ¶¶ 54, 63, 77 (admitting to purchasing health insurance). In this way, Callier's allegations, including the purchase of insurance and making inquiries about defendants' products, demonstrate that he had an "established business relationship" with defendants, including National United. *See Thomas-Lawson v. Koons Ford of Baltimore, Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *5 (D. Md. Apr. 6, 2020) ("The allegations on the face of the Complaint demonstrate the existence of an established business relationship[.]"); *Zelma v. Art Conway*, No. 2:12–CV–00256, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) ("the Court finds that the Established Business Relationship exception applies and therefore the calls made by Defendants were permissible under the TCPA"). An EBR means that

the one call that implicates National United was not telemarketing, and thus Section 64.1200(d) would not apply. Count II should be dismissed with prejudice for this alternative reason as well.

### E. Vicarious Liability: Callier's allegations fail to allege any sort of agency relationship or ratification. Vicarious liability does not exist and therefore provides no basis to keep National United in this case.

25. To the extent Callier seeks to hold National United vicariously liable for any of the other calls in the amended complaint, the allegations do not support liability because Callier lumps defendants together without any details of their relationship. While a plaintiff does not have to allege facts based on his or her knowledge at the pleading stage, a plaintiff "does have to allege a factual predicate that gives rise to an inference of an agency relationship." *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019). In the same vein, courts have made it clear that broad, generalized allegations that lump defendants together are not sufficient to give rise to an inference of an agency relationship. *See id*. ("To sufficiently establish an agency relationship—and thereby a claim for vicarious liability—Plaintiff must allege factual allegations regarding [defendant's] relationship with the purported agents/callers—broad, general allegations are not sufficient."). Furthermore, "[t]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough." *Id*. at *5.

26. Here, Callier's amended complaint does not contain allegations that connect National United to any of the other defendants. Either Callier fails to mention National United at all, or he makes blanket and general allegations without any substance as to the relationship between National United and any of the other defendants or any differentiation amongst the vaguely (and likely intentionally) grouped "Defendants.". Callier cannot rely on labels and conclusions to establish a well-pleaded claim for vicarious liability. Callier must allege factual

allegations that give rise to some plausible inference that National United was working in concert with the other defendants, but Callier chose not to include those allegations in his amended complaint with respect to National United. Callier failed to plead an agency relationship, and thus National United cannot be held liable under a theory of vicarious liability.

   F. **Counts III & IV: Once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Alternatively, the Court should dismiss Count III because it relies on invalid TCPA claims, and the Court should dismiss Count IV because there is no private right of action for the Texas Code Section that Callier cites.**

27.     Callier has attempted to state two federal claims (Counts I and II) and two state law claims (Counts III and IV). Once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the pendant state-law claims, which is the norm in the Fifth Circuit. *E.g.*, *Richardson v. Univ. of Texas Sys.*, No. 5:19-CV-271, 2019 WL 2329322 (W.D. Tex. May 31, 2019) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.") (citing *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)); *Enochs v. Lampasas County,* 641 F.3d 155, 161 (5th Cir. 2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

   1. **Count III fails once the TCPA claims are dismissed.**

28.     But to the extent the Court is inclined to put Callier out of his misery, which this Court has discretion to do, Count III also fails as a matter of law. Count III relies exclusively on the validity of Callier's TCPA claims. Other district courts in Texas have explained that once the TCPA claims are dismissed, plaintiffs like Callier cannot maintain a claim under Texas Business and Commerce Code Section 305.053. "If no violation of the TCPA exists, there is no violation of [§ 305.053]." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex.

2014) (citing Tex. Bus. & Com. Code § 305.053); *Shields v. Americor Lending Grp., Inc.*, No. 01-06-00475-CV, 2007 WL 2005079, at *3 n.8 (Tex. App.—Houston [1st Dist.] July 12, 2007, no pet.); *Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A–12–CA–376–SS, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013)). These decisions are dispositive. Once the TCPA claims are dismissed, Count III should be dismissed in turn.

### 2. Count IV fails because Section 302.101 does not contain a private right of action.

29.     As to Count IV, it alleges a violation of Texas Business and Commerce Code § 302.101. This Section contains the registration requirements for telemarketers and other sellers in the State of Texas, and it states, among other requirements, that "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code Ann. § 302.101. It goes on with the application process and other requirements for telemarketers.  With respect to violations, Subchapter F of § 302 is titled "Offenses" and states that for violations of § 302.101 and other sections, "An offense under this section is a Class A Misdemeanor." Tex. Bus. & Com. Code Ann. § 302.251(b). At the same time, Subsection F does not contain a private right of action or statement of damages that a supposedly aggrieved consumer can pursue. Accordingly, a violation of this Section is something for the Texas authorities to pursue, if they so choose, but not Callier. *Berg v. Bank of Am., N.A.*, No. A–12–CV–433 LY, 2012 WL 12886433, at *7-*8 (W.D. Tex. Sept. 19, 2012), *report and recommendation adopted sub nom. Berg v. Guar. Residential Lending*, No. A–12–CV–433–LY, 2012 WL 12886597 (W.D. Tex. Nov. 1, 2012) (citing *Witkowski v. Brian, Fooshee & Yonge Properties*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.)).

## IV.   CONCLUSION

Callier's first amended complaint fails as a matter of law. He has either pleaded himself out of court, or he has failed to state plausible claims against National United. Importantly, Callier's errors are not something he can fix or artfully plead around, which justifies a dismissal with prejudice. National United therefore respectfully requests that the Court dismiss Counts I, II, III and IV of Callier's first amended complaint with prejudice and grant National United all other and further relief the Court deems proper.

Dated: July 14, 2021    Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By: */s/ Caroline Newman Small*
Caroline Newman Small
State Bar No. 24056037
E-mail: *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

**ICE MILLER LLP**

Isaac J. Colunga
(*Admitted Pro Hac Vice*)
Illinois Bar No. 6289253
E-mail: *isaac.colunga@icemiller.com*
200 W. Madison Street, Suite 3500
Chicago, Illinois 60606
Tel: (312) 726-7157
Fax: (312) 726-7102

***Counsel for Defendant***
***National United Group, LLC***

**CERTIFICATE OF SERVICE**

      I certify that on July 14, 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be served upon the parties listed below via the methods indicated below:

| | | |
|---|---|---|
| Mr. Brandon Callier | __X__ | UPS |
| 6336 Franklin Trail | _____ | CMRRR |
| El Paso, Texas 79912 | _____ | Facsimile |
| E-mail: *callier74@gmail.com* | __X__ | E-mail |
| ***Pro Se Plaintiff*** | _____ | CM/ECF |
| | | |
| Mr. Daniel Durell | _____ | UPS |
| LOCKE LORD LLP | _____ | CMRRR |
| 600 Congress Ave., Suite 2200 | _____ | Facsimile |
| Austin, Texas 78701 | _____ | E-mail |
| E-mail: *daniel.durell@lockelord.com* | __X__ | CM/ECF |
| ***Counsel for Defendant Centene Corporation*** | | |
| | | |
| Mr. Earl L. Ingel | _____ | UPS |
| MUNSCH HARDT KOPF & HARR, P.C. | _____ | CMRRR |
| 700 Milam Street, Suite 2700 | _____ | Facsimile |
| Houston, Texas 77002 | _____ | E-mail |
| E-mail: *eingle@munsch.com* | __X__ | CM/ECF |
| ***Counsel for Defendant Mulberry Management Corporation d/b/a Oscar Management Corporation*** | | |

                */s/ Caroline Newman Small*
                Caroline Newman Small