FILED
July 19, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____M. Trujillo_____
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** § § § **Plaintiff,** § § v. § **No. EP-21-CV-00071-DB** § **NATIONAL UNITED GROUP, LLC,** § **et al.,** § § **Defendants.** § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT NATIONAL UNITED GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW PLAINTIFF BRANDON CALLIER with his response to Defendant National United Group, LLC's ("National United") Motion to Dismiss Plaintiff's First Amended Complaint, and will show as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1. Plaintiff has been receiving calls containing pre-recorded voice messages from the Defendants for more than a year. To date, Plaintiff has received more than 300 of these calls and on March 22, 2021, Plaintiff filed his Original Complaint and his First Amended Complaint on June 24, 2021. Plaintiff engaged in settlement talks with National United. However, those talks fell through when National United refused to identify the owners, principals, agents, managers, or a single human being associated with National United and provide the identity of anybody even tangentially associated with National United. National United even took down its website and closed it's Facebook account in order to hide incriminating evidence. National United

1

intentionally deleted evidence National United knows, or should have known, is relevant to Plaintiff's claims, after being served the Complaint.

2. National United begins it's motion to dismiss by noting "Plaintiff Brandon ("Callier") has made a cottage industry out of filing Telephone Consumer Protection Act ("TCPA") lawsuits. The electronic docket for the Western District of Texas reflects over twenty TCPA cases that Callier has filed in just over a year. Callier sues companies large and small, with the goal of squeezing settlements from those companies as quickly as possible." (Dkt. 43 ¶ 1).

3. Defendant is implying that an economic motivation – inferred from Plaintiff's alleged "goal of squeezing settlements" – removes Plaintiff form the statute's zone of interest. Nothing in the text of the TCPA supports this argument. Implicit in Defendant's argument is the notion that expertise in Plaintiff's TCPA litigation is necessarily bad – bad enough to rob Plaintiff of his ability to bring cases. "Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v Rapid Response Monitoring Servs, Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017).

4. Many defendants of TCPA complaints have argued, and this Defendant implies, that Plaintiffs who file TCPA lawsuits somehow waive their rights under the TCPA. The warped rationale being because these plaintiffs are aware of their rights under the TCPA, and exercise those rights, they should not be allowed to hold TCPA violating companies responsible for violating the TCPA. **NOTHING** in the law provides a basis for assertion.

5. From a practical standpoint the defense is saying people aware of the TCPA, and their rights under the law, should not be able to exercise those rights. Assuming that were true (it isn't) that would leave only persons unaware of the TCPA to enforce the TCPA and hold

violating companies accountable. Defense attorneys want the Courts to remove the only people holding TCPA violators accountable so that the violators may operate with impunity. Courts should reject this flawed attempt to create a backdoor immunity for TCPA violators.

6. In its Motion to Dismiss National United makes a number to references to the **live** calls made by National United to Plaintiff. For example, Defendant states "First, in Count I, Callier alleges that Defendants violated the TCPA's prohibition against phone calls to residential phone lines "using an artificial or pre-recorded voice" to deliver a message. 47. U.S.C. § 227(b)(1)(B). (Dkt 43 ¶ 4). The Defendant further states "Yet, for the one call in Callier's complaint that seems to implicate National United, Callier admits he received a live voice call from an actual agent. This sinks the claim, as Section 227(b)(1)(B) neither applies to nor prohibits live voice calls." (Dkt 43 ¶ 4).

7. Defendant misstates Plaintiff's charge. Plaintiff has alleged National United called Plaintiff, Plaintiff answered the phone and heard a pre-recorded message (which Plaintiff has a recording of). Plaintiff alleges this pre-recorded voice message call was initiated by National United and National United's representative called Plaintiff back directly with a live call **AFTER** first contacting Plaintiff via a pre-recorded call using an artificial voice as prohibited by 47 U.S.C. § 227(b)(1)(A)(iii).

8. Plaintiff does allege a contractual relationship exists between the defendants in this case. Plaintiff believes National United is the origin of the robocalls and refers leads to the other defendants. Plaintiff is happy to make this clear in an amended Complaint. In fact, Plaintiff plans to add the owners and/or officers of National United as defendants once he is able to identify them during discovery. The fact is without the benefit of discovery Plaintiff has limited knowledge at this point in the proceedings because the defendants in this case have taken

careful steps to remain anonymous. National United has even removed its website and Facebook pages because they contain incriminating evidence that supports Plaintiff's allegations. With the benefit of discovery Plaintiff will be able to determine the common nucleus, connections, contracts and relationships lead to each of the defendants in this case contacting the Plaintiff.

## II.     BACKGROUND AND ALLEGATIONS

9. Defendant claims "only five of the allegations implement National United." This is not a legal defense. All of these defendants are associated in various ways to the calls. But to be clear Plaintiff believes the origin of the pre-recorded voice message calls is National United. However, Plaintiff has not had the benefit of discovery to uncover the clandestine calls in which the agents did not properly identify themselves during a single phone call. In fact, each and every time Plaintiff asked who was making the call, the representative on the other end of the robocall either did not answer, hung up the phone, or lied and said "Obamacare."

10. National United implies Plaintiff established a business relationship between Plaintiff and the Defendants starting in at least October 2020 (Dkt 43 ¶ 9). Plaintiff did enroll in an insurance policy in an attempt to determine who was making the repeated robocalls to the Plaintiff. Defendant National's established business relationship argument has multiple fatal flaws. First, nothing in the TCPA says any type of business relationship means the TCPA violator can randomly call clients using pre-recorded voice messages soliciting a product. Indeed, the fact that the calls continued to come in, and the calls all contained the same pre-recorded solicitation is evidence the Defendants in this case were, in fact, using autodialing technology. The Defendants were not making calls to Plaintiff to follow up on an existing relationship. The Defendants were autodialing Plaintiff continuing to solicit.

11. Second, the phone calls alleged in the Complaint began months before the

Plaintiff feigned interest in purchasing a policy. The Defendants cannot establish a business relationship after the fact to excuse their illegal behavior. That being said, the insurance policy Plaintiff inquired about in October 2020 never went into effect.

12. Third, Defendants are responsible for their actions regardless of whether Plaintiff sought Information from the Defendants by way of an insurance policy. In an analogous case the Court noted "Victory Phones highlights situations in which Mr. Perrong has sought additional communications in order to learn the identity of the offending caller. But these additional communications follow his first suffering an injury cognizable under the TCPA. For TCPA purposes, the point is that the caller placed the offending call in the first place. And courts, both within this Circuit and outside, have rejected the argument that a plaintiff who poses as an interested consumer negates standing under the TCPA. *See e.g. Abramson v Oasis Power LLC*, No. 2:18-CV-00479, 2018 WL 410857, at *6 (W.D. Pa. July 31, 2018), *report and recommendation adopted*, No. CV 18-479, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018); *Cunningham v Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). Assuming that Mr. Perrong has previously sought additional information from a telemarketer in order to identify it, such conduct is merely part of enforcing the TCPA." *Perrong v. Victory Phones LLC*, No. 20-5317, (E.D. Pa. Jul. 15, 2021). Defendant cannot use Plaintiff going through the application process, though not actually enacting the insurance policy, as a way to excuse more than a year's worth of TCPA violating calls.

13. Plaintiff acknowledges he had Barbara Rios, and other Spanish speaking persons, translate for him. This is because the robocalls are all in Spanish and Plaintiff does not speak Spanish. Plaintiff had no other way to determine who was making the calls. Yes, all of the robocalls were with spoofed Texas area codes that are designed to trick consumers into

answering the phone. National United only revealed their true identity when there was a bad connection on the robocall, and they told Plaintiff they could call back from a different number. Plaintiff received multiple calls robocalls and direct calls from National United.

14. National United brings up the fact Plaintiff does not make allegations against the owners of National United stating "Callier also includes allegations about certain individual defendants, and how these individual defendants "control" or "dominate" the larger company defendants. *See id*. ¶¶ 86-93. Significantly, National United is not named anywhere in those allegations. *Id*." (Dkt.43 ¶ 11). This is true. Plaintiff has not been able to identify the clandestine operators of National United. Indeed, National United's attorney refused to reveal their identities and refused to name them during settlement discussions. National United even took steps to erase evidence by removing their website from the internet and closing their Facebook page. National United has operated in the shadows and only the benefit of discovery will allow Plaintiff to reveal the identities of the individuals that control and dominate National United. Plaintiff has John Does listed as defendants because he expects to uncover additional responsible parties.

15. Plaintiff cannot be expected to know the exact nature of the relationship(s) between the defendants at this point in the proceedings. Plaintiff received anonymous robocalls in which the caller IDs were spoofed and the telemarketers refused to reveal their identities, and who they were calling on behalf of. With the benefit of discovery Plaintiff will be able to determine which of the companies is responsible for the robocalls, their contractual relationship with each of the defendants to whom they refer leads, and the monetary compensation each of the defendants paid for leads. None of this is possible without the benefit of Discovery. But

Plaintiff is able to establish that there is a relationship because each of these defendants contacted Plaintiff as a result of a centralized set of robocalls.

### III.     ARGUMENTS AND AUTHORITIES

#### A.  Defendant's Rule 12(b)(6) motion is without merit.

16.     Plaintiff has received more than 300 automated phone calls from the Defendants in this case and continues to receive phone calls to this day.  These phone calls contain pre-recorded voice messages in Spanish soliciting health care products. This factual allegation alone is enough to establish a violation of Section 227(b)(1)(A)(iii) and Section 227(b)(1)(B).  Defendant's motion under Rule 12(b)(6) is so tenuous and without merit Defendant doesn't even state how Plaintiff's Complaint is deficient.

#### B.  Defendant National United Group violated Section 227(b)(1)(B) and Section 227(b)(1)(A)(iii).

17.     As previously noted, Plaintiff is accusing National United of making prerecorded voice calls in violation of Section 227(b)(1)(A)(iii) and 227(b)(1)(B).  Plaintiff is accusing National United of both making robocalls using prerecorded voice messages to his cell phone and making unauthorized direct phone calls to his cell phone.  The allegations are not mutually exclusive.  National United made robocalls to Plaintiff and followed up those robocalls with direct phone calls.  The robocalls made to Plaintiff by National United used spoofed Texas area codes.  The direct calls from National United to Plaintiff used National United's real phone number.  Explicitly National United caused the prerecorded voice call that preceded National United calling Plaintiff back from their real phone number.

#### C.  Section 227(b)(1)(A)(iii) does not require use of an autodialer.

18.     Defendant's is either confused about Section 227(b)(1)(A)(iii), or is

purposefully misrepresenting the statute. Section 227(b)(1)(A)(iii) says it should be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States to (A) make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system *OR* an artificial or prerecorded voice. (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service….." (emphasis added). 47 U.S.C. § prohibits both auto dialing technology and artificial or prerecorded voice messages. Any assertion otherwise is inconsistent with case law, FCC implementation, common sense, and the plain reading of the statute.

19. To the extent Defendant argues an autodialer wasn't used because a random or sequential number generator was not used, it is irrelevant because the mere fact Plaintiff has more than 200 recordings of telephones with prerecorded voice messages makes Section 227(b)(1)(A)(iii) actionable. But even taking Defendant's defense at face value, Plaintiff has alleged numerous randomly generated phone calls that suggest a ATDS has been used. The true nature of the system used go generate the more than 300 phone calls Plaintiff has received can only be revealed with the benefit of discovery. The Defendant is not arguing a point that would lead to a dismissal. The Defendant is arguing for discovery to determine if the dialing system used a random or a sequential number generator. But as previously stated, Section 227(b)(1)(A)(iii) automatically applies because a prerecorded voice message was used to dial Plaintiff over 300 times and Plaintiff is still receiving calls to this very date.

**D. Plaintiff's Cell phone is a residential phone and regulations apply to calls made to cell phones**

20. Defendant alleges Plaintiff's cell phone is not a residential phone for purposes

of the TCPA and subsection 64.1200(d) does not apply. Defendant uses a recent ruling in this District in *Callier v. Greensky, Inc.*, EP-20-CV-00304-KC in which Plaintiff's complaint was dismissed without prejudice, in part. The Court dismissed holding they were not aware of any cases in which cell phones were deemed "residential" and therefore decided with the Defendant. Plaintiff believes this was wrongly decided and filed an amended complaint to appeal the decision and in doing so provided the Court with multiple case law examples of Courts holding cell phones were "residential" phones with coverage under 64.1200(d). However, the case was settled before the Court could rule on Plaintiff's amended complaint. Of note, in Defendant's response Defendant purposefully misstates that Plaintiff's case was dismissed with prejudice, when Defendant knows full well the case was dismissed "without prejudice" allowing Plaintiff an opportunity to present examples of authorities deeming cell phones as "residential lines," which Plaintiff has provided in abundance.

21. Plaintiff has alleged sufficiently his cell phone is a "residential" phone. Plaintiff has stated this is his personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

Of particular interest to this Court with respect to cell phones being considered "residential" is the recent March 1, 2021, ruling in *Strange v. ABC Co. et el*.

In *Strange v ABC Co*. the Court noted:

"Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes. See Strange v. Doe #1, No. 19-1096, 2020 U.S. Dist. LEXIS 8476, 2020 WL 2476545, *3 (W.D. La. May 12, 2020) (collecting cases). The Federal Communications Commission, which is the agency responsible for the TCPA's implementation, has observed this disconnect between the treatment of residential phones and has stated:

[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed [*10] concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude, that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) (footnotes omitted).

From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers. However, the Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of section 227(c)(5) against the Defendants. See Cunningham [*11] v McDonald, No. 3:15-

CV-215, 2018 U.S, Dist. LEXIS 201403, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under (c)(5)"); Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 655 (W.D. Tenn. Feb. 4, 2020) ("Courts have interpreted the 'residential telephone subscriber' element to require proof the number called was used for 'residential purposes,' ") Cunningham v. Rapid Capital Funding, LLC/RCF, No. 3:16-CV-2629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("While this Court has suggested that calls to a cell phone may be construed as calls to a residential telephone, the plaintiff must plead facts showing the cell phone is used for *residential purposes*." (emphasis in original)).  Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes." *Strange v. ABC Co.*, No. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

22. Courts have clearly held that cell phones used for residential purposes are considered "residential" for the purposes of the TCPA and have the full protection of the law. This is consistent with the intent of Congress, case law, and FCC rulings and interpretation.

Title 47 of the Code of Federal Regulations defines two types of phone subscriptions:

47 C.F.R. § 64.2305(b) defines a business subscriber as a subscriber to a telephone exchange service for businesses.

47 C.F.R. § 64.2305(d) defines a residential subscriber as a subscriber to a telephone exchange that is not a business subscriber.

23. The definitions are clear.  Any telephone that is not a business phone is a residential telephone.  The FCC was charged by Congress with implementing the TCPA, and has been consistent in their rules, regulations, and interpretations that cell phones used for residential purposes are indeed residential phones and have the full protection of the TCPA to include 47

11

C.F.R. § 64.1200(d) protection. Some Courts have incorrectly ruled this protection does not apply. However, the FCC has explicitly ruled that it does.

24. Some Courts have incorrectly defined the term residential to mean "landline" and deemed cellular phones not subject to the protection of 47 C.F.R. § 64.1200(d). Defenses have argued the language of the statute "No person or entity shall initiate any call for telemarketing purposes to a **residential telephone subscriber** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d) (emphasis added). The Defendant on page 8 of their Motion to Dismiss states "Callier seems to forget that this regulation applies only to 'residential telephone subcribers' and does not apply to cell phones." (Dkt. 43 ¶ 21). Defendant further states "here Callier alleges that the calls at issue were placed to his cell phone, not a residential landline, which justifies a dismissal with prejudice. Id. at *6 (dismissing claim with prejudice and explaining "Plaintiff does not cite – and the Court is not aware of any authority that has found § 64.1200(d)(1) applicable to cell phones." (Dkt. 43 ¶ 21).

25. Plaintiff's case was dismissed WITHOUT PREJUDICE. Plaintiff appealed this ruling and provided numerous authorities for the Court to consider. However, the case was settled before the Court could rule. Plaintiff currently has motions pending before the Court addressing this ruling, and Plaintiff will not settle those cases until the Court has the chance to review the multitude of authorities ruling cellular phones used for residential purposes are indeed residential phones.

26. Plaintiff does not, and did not ever have an established business relationship with National United. First, Plaintiff had been receiving auto dialed phone calls with prerecorded voice messages for multiple months before feigning interest in purchasing a health

insurance policy. Second, when Plaintiff did enroll in a health insurance policy, the policy was sold by AM Better health insurance policy. National United is not the health insurance company. The health insurance policy did not list National United as the broker, agent, health insurance company, or in any capacity. In fact, Plaintiff did not even know who National United was until months later. It is impossible for a consumer to have an existing business relationship with an anonymous entity. If National United is asserting an existing business relationship, then National United needs to define that relationship and explain the origins of that relationship. Plaintiff did not hire National United to solicit on Plaintiff's behalf. National United was not servicing a health insurance policy it held with Plaintiff. The facts are, Plaintiff was unable to even enter into a business relationship with National United because National United is an anonymous player acting in the shadows. Plaintiff would be happy for National United to explain their connection to the insurance policy Plaintiff purchased and how it established a business relationship with Plaintiff, because Plaintiff cannot find National United listed anywhere in the insurance policy.

> **E. Plaintiff needs the benefit of discovery to establish vicarious liability. However, even without vicarious liability Plaintiff has pleaded sufficient facts to establish National United as a defendant in this case.**

27.  Plaintiff contends National United is the originator of the robocalls and earns commissions by referring potential customers to insurance agents and brokers. Plaintiff needs the benefit of discovery to get the contracts that establish the connections. Regardless, every entity in Plaintiff's First Amended Complaint either called Plaintiff, sold Plaintiff an insurance policy as the result of a robocall, or held an existing policy with Plaintiff. National United called Plaintiff multiple times in violation of the TCPA. Vicarious liability with respect to National

United does not needs to be established in order to keep National United in the case. The elements have already been established to keep National United in the case.

### F. Plaintiff's federal claims should not be dismissed and the state claims upheld.

28.     Plaintiff has established he has valid claims under the corresponding Federal statutes and therefore state claims should be upheld.

29.     Texas Business and Commerce Code Section 302.101 contains a right of privacy as recently held in *Bryant v THS Group, LLC*, No. 4:20-CV-01197-P, 2020 (N.D. Tex. Oct. 30, 2020). The Court awarded judgment in favor of the Plaintiff for $5,000 per text in violation of Texas Business and Commerce Code Section 302.302(a) and attorney's fees totaling $2,836.50 under § 302.302(d). There is existing case law citing the private right of action under Tex. Bus. and Commerce Code Section 302.101. There is nothing in the text of Texas Bus. and Commerce Code Section 302.101 that prohibits a private right of action.

### IV.   Conclusion

Defendant's Motion to Dismiss is without merit and a paint by numbers recitation of default defenses in TCPA cases. The facts are the Defendant called Plaintiff using robocalls for months. Further, the direct calls to Plaintiff were also a violation because Plaintiff has been on the Do-Not-Call Registry for more than 13 years. Despite National United taking steps to erase evidence, evidence they know full well should have been protected, they cannot get around the fact the calls were made. Plaintiff respectfully requests National United's Motion to Dismiss be denied in its entirety. Plaintiff further requests the Court make a definitive ruling holding cell phones used for residential purposes are indeed "residential phones" as determined by the FCC, previous case law, and the will of Congress.

Dated July 19, 2021                              Respectfully Submitted


                                              Brandon Callier
                                              6336 Franklin Trail Drive
                                              El Paso, TX  79912
                                              Callier74@gmail.com
                                              915-383-4604