**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **EP-21-CV-71-DB** |
| | § | |
| **NATIONAL UNITED GROUP, LLC,** | § | |
| **et al.,** | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
**ON DEFENDANT NATIONAL UNITED GROUP, LLC'S MOTION TO DISMISS**

On this day, the Court considered Defendant National United Group, LLC's ("National United") "Motion to Dismiss Plaintiff's First Amended Complaint" ("Motion"), filed in the above-captioned case on July 14, 2021.   ECF No. 43.   Therein, National United asks the Court to dismiss Plaintiff Brandon Callier's ("Mr. Callier") First Amended Complaint ("Amended Complaint"), filed on June 24, 2021.   ECF No. 33.   Mr. Callier alleges that National United, along with other entities and individuals, violated the Telephone Consumer Protection Act ("TCPA") and Texas consumer-protection statutes by making repeated phone calls to Mr. Callier's cellular phone using a robocalling system.   *See* Amend. Compl. 1–3, 8–15, ECF No. 33.   Mr. Callier issued his Response, ECF No. 44, to National United's Motion on July 19, 2021, and National United issued its Reply, ECF No. 48, on July 27, 2021.

The Court finds that Mr. Callier's allegations are sufficient to raise an inference that National United may be responsible for violations of the TCPA and the Texas Business and Commerce Code.   However, one of Mr. Callier's claims fails.   Accordingly, the Court will deny the Motion in part and grant the Motion in part.

## BACKGROUND

This case grows from a frustrated consumer's effort to identify the party responsible for nuisance robocalls that Congress sought—unsuccessfully it would seem—to eliminate decades ago.   Congress enacted the TCPA in 1991 in response to consumer outrage "over the proliferation of intrusive nuisance calls to their homes from telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6574-75 (2013).   The TCPA gave "the FCC [the Federal Communications Commission] the authority to regulate interstate and intrastate telemarketing in order to enable consumers to curb calls that had 'become an intrusive invasion of privacy.'" *Id.* at 6575 (citing *Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228, 1235 (10th Cir. 2004)).   In addition to providing the FCC with regulatory authority, the TCPA created private rights of action for violations.   *Id.*

With the prevalence of cell phones rising, the FCC expanded the protections of the TCPA in 2003 to cover users of cell phones, stating that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003).   The FCC reasoned that Congress had already "afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls" and had created the TCPA out of concern for "the nuisance, expense and burden that telephone solicitations place on consumers." *Id.*   Thus, the FCC concluded that where a person uses their cell phone as their residential phone, the person is entitled to the full protections of the TCPA. *Id.*

Mr. Callier has brought suit alleging receipt of phone calls that violate the TCPA. Amend. Compl. 1, 8, ECF No. 33.   He asserts that third parties subject to some control by

2

Defendant National United made the phone calls and that National United should therefore be held liable for violations of the TCPA and of Texas state law.   *See generally id.* at 11–12.

In his Amended Complaint, Mr. Callier raises four claims against National United.   First, he alleges that National United violated the TCPA's restriction on using automated telephone equipment, 47 U.S.C. § 227(b).   Second, he alleges that it failed to create and maintain an internal "do-not-call" list in compliance with 47 C.F.R. § 64.1200(d).   Third, he alleges that it violated Texas state law which creates a private right of action for violations of § 227 of the TCPA under Texas Business and Commerce Code § 305.053.   Fourth, he alleges that it violated Texas state law requiring that businesses hold registration certificates before directing telephone solicitations to people located in Texas under Business and Commerce Code § 302.101.   Amend. Compl. 28–31, ECF No. 33; *see also* 47 U.S.C. § 227(b); 47 U.S.C. § 227(c); 47 C.F.R. §64.1200(d)(1)–(7); Tex. Bus. & Com. Code § 305.053; Tex. Bus. & Com. Code § 302.101.

In its Motion, National United asks the Court to dismiss all four claims in Mr. Callier's Amended Complaint.   Mot. 1–3, 12–13, ECF No. 43.   It asserts that Mr. Callier's first claim, that National United violated the TCPA's restriction on the use of automated equipment provision, fails because Mr. Callier (a) "admits he received a live voice call from an actual agent," a type of call that is not prohibited by the TCPA, (b) "does not allege that National United used an ATDS [automated telephonic dialing system] to call," and (c) "doesn't allege anything that would raise any type of agency relationship or ratification beyond mere legal conclusions."   *Id.* at 2–3.   National United further asserts that Mr. Callier's second claim, that National United failed to comply with the minimum requirements established by 47 C.F.R. § 64.1200(d), fails because "Callier's complaint does not contain any allegations pertaining to

National United's internal policies or procedures." *Id.* at 3.   National United asserts that Mr. Callier's third claim, alleging a violation of Texas Business and Commerce Code § 305.053, fails because it "relies on invalid TCPA claims." *Id.* at 12.   Finally, it asserts that Mr. Callier's fourth claim, brought under Texas Business and Commerce Code § 302.101, fails because the statute "does not contain a private right of action." *Id.* at 13.

Mr. Callier argues that he has pleaded sufficient factual support for all four claims against National United.   *See* Resp. 7–8, 13–14, ECF No. 44.

## LEGAL STANDARD

National United moves to dismiss Mr. Callier's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").   Mot. 1, ECF No. 43.

"When faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true.   We must also draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal citations omitted).   The Court considers only "the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (internal quotations omitted).

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citing Fed. R. Civ. P. 8(a)(2)).

To meet the requirements of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

4

544, 570 (2007).   "A claim has facial plausibility when [a plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* at 679.   Consistent with Rule 8(a)(2)'s requirement that the complaint "show" and not merely allege that a party is entitled to relief, the well-pleaded facts must do more than "permit the court to infer . . . the mere possibility of misconduct."   *Id.*

Facial plausibility requires "more than an unadorned . . . accusation."   *Iqbal*, 556 U.S. at 678.   Thus, "conclusory statements are 'not entitled to the assumption of truth.'"   *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).   A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."   *Id.* (quoting *Twombly*, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."   *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations and alterations omitted).

Highly general assertions directed at no one in particular are not sufficient to raise an inference of plausibility against a particular defendant.   *See Cobarobio v. Midland Cty.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102, at *9 (W.D. Tex. Jan. 7, 2015), *aff'd*, 695 F. App'x 88 (5th Cir. 2017) (stating that the *Iqbal* standard was not met by a complaint containing "global assertions of fault," "routinely lump[ing] all Defendants together without identifying actions of any individual Defendant," and failing to "set out the specific factual allegations . . . [relating to] any particular defendant.").

## ANALYSIS

The Court will begin its analysis by looking to Mr. Callier's Amended Complaint, taking all his assertions as true as required for a Rule 12(b)(6) motion. *Lormand*, 565 F.3d at 232. However, the Court will disregard any "mere global assertions of fault" that have no asserted factual connection to National United. *Cobarobio*, 2015 WL 13608102, at *9. Such statements will be treated as "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

The Court will then answer two questions: (1) whether National United bears responsibility for the actions of the third-party entity or entities who made the phone call and (2) whether the phone call does in fact create a basis for Mr. Callier's claims.

Ultimately, the Court finds that Mr. Callier's Amended Complaint provides a sufficient factual basis for a plausible inference of liability regarding three of Mr. Callier's four claims against National United. However, the Amended Complaint does not provide such a basis for Mr. Callier's other claim, as it is based solely on blanket allegations against all defendants.

### 1. In Ruling on the Motion, the Court Will Consider Only the December 15 Phone Call.

Mr. Callier's Amended Complaint is full of generalized allegations. The Court will disregard these allegations and instead focus its analysis on the portion of Mr. Callier's Amended Complaint supported by specific facts implicating National United.

6

**a. The Court will take Mr. Callier's allegations as true but will not consider generalized allegations against all defendants.**

Mr. Callier asserts that, while in El Paso County, he received "at least 204 automated phone calls with prerecorded voice messages" starting "[o]n or about July 21, 2020," and continuing through the date of filing.   Amend. Compl. 8, ECF No. 33.

In his Response, Mr. Callier suggests that "National United is the origin of the robocalls and refers leads to the other defendants."   Resp. 3, ECF No. 44.   However, in evaluating National United's Motion, the Court is limited to the allegations made in the Amended Complaint.   *See Ferguson*, 802 F.3d at 780.

Most of the allegations in the Amended Complaint are highly generalized and not clearly directed at any particular defendants.   *See* Amend. Compl. 8, ECF No. 33.   In the Amended Complaint, Mr. Callier asserts that all "[d]efendants did nothing to stop the harassing phone calls despite being alerted via written demand to cease the phone calls."   *Id.* at 14.   He goes on to claim that all "[d]efendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the misleading sales practices and unlawful robocalling" and states that all "[d]efendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy."   *Id.*

General allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant.   *See Cobarobio*, 2015 WL 13608102, at *9.   A pleading must provide specific factual allegations of violations against specific defendants to suffice.   *See id.* (citing *Iqbal*, 556 U.S. at 678).   Using the "collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom" fails to meet the fair notice standard under Rule 8. *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also*

7

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (holding that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8's] minimum standard"). Thus, the Court will not consider Mr. Callier's assertions against all defendants generally when they are not supported by specific factual allegations. Mr. Callier's assertions in his Response that National United itself is responsible for all the phone calls cannot make up for the shortcomings of the Amended Complaint itself. *See Ferguson*, 802 F.3d at 780.

### b. Mr. Callier connects only the December 15 phone call to National United.

Importantly, Mr. Callier connects only one phone call to National United with specific factual allegations and thus the Court will focus only on the facts regarding this specific call. Amend. Compl. 11–12, ECF No. 33. Mr. Callier received this phone call on December 15, 2020. *Id.* at 11. It came from area code 210 and had a prerecorded message in Spanish regarding the solicitation of health insurance. *Id.* at 11. Barbara Rios ("Ms. Rios"), a Spanish speaker, translated the message for Mr. Callier and then, at Mr. Callier's request, spoke to the live representative to whom she was connected after she pressed a number as the prerecorded message instructed. *Id.* The representative "informed Ms. Rios she would be hanging up and 'calling back from a different number so [Ms. Rios could] talk to an agent.'" *Id.* Mr. Callier immediately received a follow-up call from 786-650-1617, a number belonging to National United. *Id.* at 11–12. During that phone call, a person solicited Ms. Rios to purchase health insurance through Oscar Management Corporation. *Id.*

In evaluating whether National United is liable for violations of the TCPA and Texas state law, the Court will consider only the details of this December 15 call.

8

## 2. Mr. Callier's Amended Complaint Allows a Plausible Inference that an Agency Relationship Exists Between National United and the Entity Which Made the December 15 Phone Call.

Before the Court addresses the question of whether the phone call violated the TCPA or Texas state law, the Court must determine whether National United can be held responsible for that phone call.   Mr. Callier does not allege National United itself made the call. Amend. Compl. 11–12, ECF No. 33.   Rather, he asserts that National United was working in concert with the telemarketers to sell the health insurance and is thus responsible for the telemarketer's violation of the TCPA.   *See id.*; *see also* Resp. 3–4, ECF No. 44.

National United argues that Mr. Callier's admission that a live agent contacted him precludes any finding that it violated the TCPA.   Mot. 6, ECF No. 43.   National United further asserts that because the call from National United came from a Florida area code ("786"), it is differentiated from the prerecorded calls that utilized various Texas area codes.   Mot. 6, ECF No. 43.   It does not directly address Mr. Callier's implication of a relationship between National United and the entity that made the allegedly violative phone call.

National United's arguments are basically irrelevant, as Mr. Callier does not assert that the call from the Florida area code violated the TCPA.   *See* Amend. Compl. 11–12, ECF No. 33; Resp. 3–4, ECF No. 44.   He claims that the call immediately preceding the call from Florida violated the TCPA.   Amend. Compl. 11–12, ECF No. 33.   Mr. Callier argues that the proximity between the calls—the callback from National United came immediately after Mr. Callier's conversation with the other entity—implies that National United had at least some measure of control or coordination with the entity that made the illegal phone call.   *Id.*

The Court must therefore determine whether Mr. Callier's pleadings provide a basis for the inference that an agency relationship exists between the telemarketers and National

United.   Only if such a relationship exists can National United be held vicariously liable for any violation of the law.   The Court makes its determination by applying common law agency principles to the practical realities of TCPA enforcement.

A person can be held directly liable when he or she initiates a call that violates the TCPA.   *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013).   Additionally, a person or entity "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."   *Id.*

An agency relationship is "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control."   Restatement (Third) of Agency § 1.01.   Whether an agency relationship exists is generally a question of fact.   *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 870 (5th Cir. 2000); *see also Seaboard Props., Inc. v. Bunchman*, 278 F.2d 679, 681 (5th Cir. 1960) ("Generally speaking, the question of whether an agency relationship exists is a question of fact to be resolved by the jury").   Moreover, "the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called."   *Stripling*, 234 F.3d at 870 (quoting 3 Am. Jur. 2d *Agency* § 21 (1962)).

Where a court requires additional facts to "know more about the course of the parties' dealings and the generally expected course of business in the field" to determine the issue of whether an agency relationship exists, it is "inappropriate for resolution on a motion to dismiss."   *Cunningham v. Rapid Response Monitoring Serv., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017).   A plaintiff need not "illuminate every corner of defendants' relationships

at the pleading stage," but must merely "ple[a]d facts sufficient to support a plausibl[e] claim for relief." *Id.* Thus, the Court looks only at whether Mr. Callier has sufficiently pled the plausible existence of an agency relationship between National United and the telemarketer which made the allegedly violative phone call; it does not now determine whether such relationship truly exists.

A defendant may be vicariously liable for a telemarketer's violation of the TCPA's restriction on the use of automated equipment where a plaintiff can show an agency relationship between a defendant and a third-party telemarketer. *See generally In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6586–89. Consumers may acquire evidence of this nature through discovery. *Id.* at 6592–93. The FCC has stated that in "actions to enforce section 227(b) [which limits the use of automated equipment] or actions to enforce do-not-call restrictions under section 227(c) [which protects subscribers' privacy rights], . . . nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call." *Id.* at 6593.

Multiple district courts have addressed the sufficiency of plaintiffs' pleadings regarding the possible existence of an agency relationship. Together the cases support the Court's conclusion that Mr. Callier's Amended Complaint provides a sufficient factual basis for a plausible inference of an agency relationship.

In *Cunningham v. Nationwide Security Solutions, Inc.*, the plaintiff received phone calls with prerecorded messages about purchasing a home security system. No. 3:17-CV-00337-M, 2017 WL 10486988, at *1 (N.D. Tex. Nov. 2, 2017). The plaintiff, by agreeing to purchase one of the security systems, determined who was responsible for the calls and asserted that they were made "at the direction of and on behalf of" the defendant. *Id.* at *1–2.

11

The court found that those assertions were sufficient to allege vicarious liability for a violation of the TCPA.  *Id.* at *2–3.

   In *Cunningham v. Foresters Financial Services, Inc.*, the court found the plaintiff's complaint sufficiently alleged an agency relationship even though it "[did] not allege details regarding the relationships between the [defendants]" because the plaintiff could not "reasonably be expected to know such information at [that] stage of litigation."   300 F. Supp. 3d 1004, 1016 (N.D. Ind. 2018).   The plaintiff "allege[d] that on some calls, '[p]laintiff was able to speak with agents in the call centers and determine that they were all selling final expense life insurance by [the defendant]."   *Id.* at 1011.   The court found that the plaintiff's allegations were sufficient to give the defendants notice of the claims being brought against them, and thus denied the defendants' motion to dismiss.   *Id.* at 1016.   The court acknowledged the plaintiff's need for discovery to "more precisely identify each defendant's role."   *Id.* at 1016.

   Courts have dismissed complaints containing less factual content.   In *Callier v. SunPath Ltd.*, Mr. Callier—the very same Mr. Callier—made a conclusory allegation that the defendants were vicariously liable because they were "the direct beneficiaries of the illegal telemarketing calls."   No. EP-20-CV-00106-FM, 2020 WL 10285659, at *1 (W.D. Tex. Aug. 10, 2020).   The court stated that even though it might "be reasonable to believe a telemarketer soliciting business on behalf of an entity is acting as an agent, the belief must be traceable to the conduct of the principal."   *Id.* at *4.   However, Mr. Callier did not "state the nature of the relationship these entities have with the unidentified telemarketing firm soliciting business on their behalf," nor did he provide the "factual support" necessary to contradict affidavits provided by the defendants stating that "neither entity maintains control or oversight over third-party marketing firms."   *Id.* at *3.   The court concluded on that basis that it could not "reasonably

infer an agency relationship from the mere fact that telemarketing calls were made on behalf of [defendants]." *Id.* at *3.

In *Cunningham v. Kondaur Capital*, another court found a complaint also did not contain sufficient information because it provided no factual allegations that (1) the defendant "itself had any interaction with the plaintiff," (2) "the[] entities were in fact acting at the directive of or on behalf of [the defendant]," (3) "the plaintiff was transferred to [the defendant] during the telephone calls," (4) the defendant "subsequently contacted the plaintiff in any manner as a result of the telephone calls," (5) "any other allegations from which it could reasonably be inferred that [the defendant] was provided information about the plaintiff from [the telemarketing calls]," or (6) the defendant "was a de facto participant in the telephone calls." No. 3:14–1574, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014).

In this case, Mr. Callier proceeded, like the plaintiff in *Nationwide Security Solutions*, through the process of making a purchase from a telemarketer to determine the identity of the entity ultimately responsible for the call. *See* 2017 WL 10486988, at *1; *see also* Amend. Compl. 11–12, ECF No. 33. Unlike that plaintiff, though, Mr. Callier does not directly assert that the calls were made at the behest of the named defendant. *See id.* Mr. Callier merely implies a relationship exists by showing the proximity between the initial phone call and a subsequent phone call. *See* Amend. Compl. 11–12, ECF No. 33. Through the subsequent call back, Mr. Callier traced the call to National United. *Id.* Thus, unlike the plaintiffs in *SunPath Ltd.* and *Kondaur Capital*, Mr. Callier does provide a factual allegation directly linking the telemarketers to National United. *See SunPath Ltd.*, 2020 WL 10285659, at *3–4; *Kondaur Cap.*, 2014 WL 8335868, at *7.

13

Mr. Callier's allegations closely resemble the plaintiff's allegations in *Foresters Financial*, which similarly do not contain explicit allegations of a relationship between the defendant and the third-party telemarketer. *Foresters Fin.*, 300 F. Supp. 3d at 1015–16. Like the plaintiff in that case, Mr. Callier provides sufficient facts for the Court to infer a relationship through providing the phone numbers associated with the calls and alleging that the number that immediately called him back belongs to National United. *Id.*; Amend. Compl. 11–12, ECF No. 33. Thus, Mr. Callier alleges that National United interacted with him as a result of the telemarketing call. Amend. Compl. 11–12, ECF No. 33.

The Court takes this allegation as true, as it must when deciding a Rule 12(b)(6) motion. *Lormand*, 565 F.3d at 232. Further, the allegation that National United called him back provides a basis for a plausible inference that Mr. Callier's information was provided to National United from the initial telemarketing call and that National United subsequently contacted him because of the telemarketing call. The immediacy between the two calls and the purpose of both imply that the call back was closely linked to the preceding prerecorded call. The proximity and relatedness of these calls allows for a plausible inference that the first prerecorded call was made by or on behalf of National United. The Court also notes, as did the *Foresters Financial* court, that Mr. Callier could not "reasonably be expected to know" the details of any relationship between National United and a third party "at [this] stage of litigation." *Foresters Fin.*, 300 F. Supp. 3d at 1016.

Thus, this Court finds that Mr. Callier has alleged an agency relationship sufficiently to withstand Rule 12(b)(6) scrutiny. The Court next determines whether the call itself may violate the TCPA or Texas state law.

### 3. Mr. Callier Has Adequately Alleged that the December 15 Phone Call Violated the TCPA and Texas State Law.

Having found that National United could be responsible for the December 15 phone call, the Court now turns to Mr. Callier's claims as they relate to that phone call and determines whether they survive 12(b)(6) analysis—in other words, whether they "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Three of the claims survive, while one does not.

Mr. Callier has adequately pleaded that National United violated the TCPA's restriction on the use of automated equipment, and thus the Court will not dismiss the first TCPA claim.

Mr. Callier does not adequately plead that National United failed to comply with the TCPA requirements listed in 47 C.F.R. § 64.1200(d). He fails to allege that National United does not have procedures in place for maintaining an internal do-not-call list and fails to provide any factual support for his conclusory allegations that National United does not meet the minimum standards required by § 64.1200(d)(1)–(7).

Both of Mr. Callier's state-law claims survive 12(b)(6) analysis. His claim that National United violated § 305.053 of the Texas Business and Commerce Code is entirely dependent on the validity of his first TCPA claim, and it is therefore sufficiently alleged for the same reasons that Mr. Callier's first TCPA claim is sufficiently alleged.

Mr. Callier's claim that National United violated Texas state law requiring that businesses hold registration certificates before directing telephone solicitations to people located in Texas is also sufficiently alleged, as the Court rejects National United's argument that Mr. Callier does not have a right to bring an enforcement action.

15

### a. Mr. Callier's claim under the TCPA's restriction on the use of automated equipment provision regarding prerecorded messages will not be dismissed.

Mr. Callier claims that National United violated the TCPA's restriction on the use of automated equipment.   Amend. Compl. 28–29, ECF No. 33.   National United argues that the claim should be dismissed because the restriction applies only to situations where an autodialer is utilized.   Mot. 7, ECF No. 43 (citing § 227(b)(1)(A)(iii)).

National United misunderstands the extent of the TCPA's coverage.   The TCPA makes it "unlawful for any person within the United States" (1) to make a call "other than a call made for emergency purposes or made with the prior express consent of [the plaintiff]" (2) using "an artificial or prerecorded voice" (3) "to any telephone number assigned to a . . . cellular telephone service."   47 U.S.C. § 227(b)(1)(A)(iii).   It also makes it "unlawful for any person within the United States" (1) to "initiate any telephone call to any residential telephone line" (2) "using an artificial or prerecorded voice" (3) "to deliver a message without the prior express consent of the called party" (4) "unless the call is initiated for emergency purposes . . . ."   47 U.S.C. § 227(b)(1)(B).

The statute clearly prohibits a person from using "any automatic telephone dialing system [ATDS] *or* an artificial or prerecorded voice."   47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).   National United cites a recent Supreme Court decision about the use of ATDSs for the proposition that the prohibition only applies to the use of an ATDS, but it fails to recognize that the Supreme Court specifically states that the "statute *separately* prohibits calls using 'an artificial or prerecorded voice' to various types of phone lines, including home phones and cell phones" and that its decision "does not affect that prohibition."   Mot. 7, ECF No. 43; *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) (emphasis added).   Thus, Mr. Callier does not need to allege that National United called using an ATDS to assert a § 227(b)(1)(A)(iii) claim.

16

It is sufficient that he alleges that the phone call used "an artificial or prerecorded voice."   *See*

*Facebook, Inc.*, 141 S. Ct. at 1173.   Mr. Callier does so when he states that "[o]n December 15,

2020, Plaintiff received another pre-recorded phone call in Spanish."   Amend. Compl. 11, ECF

No. 33.

Therefore, the Court will not dismiss Mr. Callier's first TCPA claim.

### b. Mr. Callier's claim that National United failed to comply with TCPA requirements for telemarketers will be dismissed.

National United argues that Mr. Callier's second TCPA claim—that National

United failed to comply with the TCPA requirements listed in 47 C.F.R. § 64.1200(d)—must fail

because (1) the requirements "do not apply to cell phones" and because (2) "Callier alleges only

legal conclusions to support the claim."   Mot. 8, ECF No. 43.   National United again

misunderstands the scope of the TCPA but is correct that Mr. Callier provides insufficient facts

for his claim.

The TCPA provides, in § 64.1200(d) that "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity

has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity."   47 C.F.R. § 64.1200(d).

The regulation also defines the minimum standards that telemarketers must meet to comply.

*See* 47 C.F.R. §64.1200(d)(1)–(7).

Importantly, § 64.1200(d) is "applicable to any person or entity making telephone

solicitations or telemarketing calls to wireless telephone numbers to the extent described in the

Commission's Report and Order."   47 C.F.R. §64.1200(e).   The Commission's Report and

Order, as indicated above, extended the full coverage of the TCPA to cell phones.   *In re Rules*

*& Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003)

(stating "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections."); *see also Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (citing several district court opinions holding that a cell phone "can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c) and (d)"). National United's claim that § 64.1200(d) does not apply to cell phones is therefore erroneous; it applies to any cell phone being used as a residential phone. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. at 14039; *see also Hand*, 456 F. Supp. 3d at 1120.

Mr. Callier's claim nonetheless fails.   While the regulation in question could apply to Mr. Callier's cell phone, at no point in Mr. Callier's Amended Complaint does Mr. Callier allege that National United does not have procedures in place for maintaining its own do-not-call list.   *See* Amend. Compl. 8–22, ECF No. 33.   Further, there are no facts provided to support the conclusory allegations that National United does not meet the minimum standards established by the regulation.   *See id.*

Several district courts have addressed the requirements for plaintiffs to sufficiently plead that a defendant has violated § 64.1200(d) due to the defendant's faulty do-not-call lists or procedures.   The court in *Cunningham v. Lifestyles Development, LLC* stated that the plaintiff did not "allege that he made any affirmative request to [the defendant] to stop calling him or to put him on a company specific do not call list."   NO. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039, at *5 (E.D. Tex. Aug. 8, 2019).   The plaintiff also failed to "request a copy of [the defendant's] do not call procedures."   *Id.*   Thus, the court found that the plaintiff did not provide a sufficient factual basis for an inference that § 64.1200(d) had been violated.   *Id.* In *Cunningham v. Professional Education Institute, Inc.*, the court held that the plaintiff's §

18

64.1200(d) claim required dismissal because the plaintiff provided no details "as to the nature or extent of violations" and "[did] not allege that he made any such affirmative request" regarding the defendant's internal policies.    NO. 4:17-CV-00894-ALM-CAN, 2018 WL 6709515, at *6 (E.D. Tex. Nov. 5, 2018).    The court concluded that "it [was] not clear how the provision was violated."    *Id.*

Like the plaintiffs in *Lifestyles Development, LLC* and *Professional Education Institute, Inc.*, Mr. Callier does not allege that he requested National United's internal policies, nor does he assert that he requested to be placed on their do-not-call list.    *See* Amend. Compl. 8–22, ECF No. 33.    He does not assert that he asked National United, or the telemarketers, to stop calling him, nor does he provide any facts relating to the nature of the violations.    *See id.* Thus, taking all facts as true and in favor of Mr. Callier, Mr. Callier has not stated a claim upon which relief can be granted.

Therefore, the Court will dismiss Mr. Callier's second TCPA claim.

**c. The Court will not dismiss Mr. Callier's claim that National United violated Texas state law when it violated the TCPA's restriction on the use of automated equipment.**

National United asserts that Mr. Callier did not adequately plead a violation of Texas Business and Commerce Code § 305.053 because the claim "relies exclusively on the validity of Callier's TCPA claims."    Mot. 12, ECF No. 43.    The Court found Mr. Callier's first TCPA claim valid.    *See supra* 16–17.    Thus, National United is incorrect that the state law claim fails.

Texas Business and Commerce Code § 305.053 creates a right of action for "a person who receives a communication that violates [the TCPA as codified at] 47 U.S.C. Section 227 [or] a regulation adopted under that provision . . . against the person who originates the

19

communication . . . ."   Tex. Bus. & Com. Code § 305.053(a).   Therefore, the elements of a §

305.053 claim "correspond to the necessary elements for a TCPA claim."   *Callier v. GreenSky,*

*Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).   Where a

plaintiff's "underlying (federal) TCPA section 227(b) claims are cognizable, [a] [p]laintiff's state

TCPA claim[s] under § 305.053 are as well."   *Id.*   Since the Court has already found that Mr.

Callier adequately states a claim under the TCPA, it also finds that he adequately states a claim

under § 305.053.

      Thus, the Court will not dismiss Mr. Callier's § 305.053 claim.

      **d.   The Court will not dismiss Mr. Callier's claim that National United violated the Texas state law requiring that businesses hold registration certificates before directing telephone solicitations because Texas state law provides a private right of action for such violation.**

      Mr. Callier's last claim is that National United violated Texas Business and

Commerce Code § 302.101, which requires telemarketers to obtain "a registration certificate . . .

for the business location from which the solicitation is made."   Amend. Compl. 31, ECF No.

33.   National United asserts that the claim must be dismissed because the relevant section of

code "does not contain a private right of action."   Mot. 13, ECF No. 43.   However, state law

does in fact provide a private cause of action for violations of § 302.101.   Thus, the Court will

not dismiss the claim.

      Texas Business and Commerce Code § 302.101 states that a person (1) "may not

make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in

[Texas]," (2) "unless the [person] holds a registration certificate for the business location from

which the telephone solicitation is made."   Tex. Bus. & Com. Code § 302.101(a).   National

United states that § 302.251(b) defines violations of § 302.101 as "Class A misdemeanor[s]" but

does not provide a private right of action.    Mot. 13, ECF No. 43; Tex. Bus. & Com. Code §
302.251.

     National United is correct that the section it refers to does not contain a private
right of action for violations of § 302.101.    However, National United fails to read Texas state
law closely.    A separate and closely related section of the Texas Business and Commerce Code
provides that a violation of Chapter 302 "is a false, misleading, or deceptive act or practice under
Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy
prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302]."    Tex. Bus. &
Com. Code § 302.303.    In that subchapter is a section providing that "[a] consumer may
maintain an action where . . . the use or employment by any person of a false, misleading, or
deceptive act or practice" causes "economic damages or damages for mental anguish."    Tex.
Bus. & Com. Code § 17.50.

     Since Texas law does provide a private right of action to enforce violations of
§302.101, Mr. Callier's final claim will not be dismissed.

## CONCLUSION

     National United moves to dismiss all claims Mr. Callier has asserted in his
Amended Complaint.    The Court finds that Mr. Callier sufficiently alleges an agency
relationship between National United and the entity which made the phone call in question.    The
Court further finds that three of Mr. Callier's claims about that phone call survive 12(b)(6)
scrutiny, while one does not.

     Mr. Callier has failed to sufficiently plead his TCPA § 227(c) claim.    Mr. Callier
has, however, sufficiently pled his claims that National United has violated TCPA § 227(b),
Texas Business and Commerce Code § 305.053, and Texas Business and Commerce Code §

302.101.   Accordingly, National United's Motion will be **GRANTED IN PART** and **DENIED IN PART**.

      **IT IS HEREBY ORDERED** that Defendant National United's "Motion to Dismiss" is **GRANTED IN PART** as it relates to Plaintiff Brandon Callier's claims that National United violated TCPA § 227(c).

      **IT IS FURTHER ORDERED** that Defendant National United's "Motion to Dismiss" is **DENIED IN PART** as it relates to Plaintiff Brandon Callier's claims that National United violated § 227(b), that it violated Texas Business and Commerce Code § 305.053, and that it violated Texas Business and Commerce Code § 302.101.

      **SIGNED** this _17_ th day of **November 2021.**

_____

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

22