**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-71-DB** |
| | § | |
| **NATIONAL UNITED GROUP, LLC,** | § | |
| **et al.,** | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OPINION AND ORDER ON DEFENDANT MULBERRY
MANAGEMENT CORPORATION'S MOTION TO DISMISS**</u>

On this day, the Court considered Defendant Mulberry Management Corporation

d/b/a Oscar Management Corporation's ("Oscar") "Motion to Dismiss Plaintiff's Amended

Complaint" ("Motion"), filed in the above-captioned case on July 22, 2021.   ECF No. 47.

Therein, Oscar asks that the Court dismiss Plaintiff Brandon Callier's ("Mr. Callier") First

Amended Complaint ("Amended Complaint"), ECF No. 33, filed on June 24, 2021.   *Id.*   Mr.

Callier alleges that Oscar, as well as other entities and individuals, violated the Telephone

Consumer Protection Act ("TCPA") and Texas consumer statutes by making repeated phone

calls to Mr. Callier's cellular phone using a robocalling system.   *See* Amend. Compl. 1–3, 8–15,

ECF No. 33.   Mr. Callier responded to Oscar's Motion on August 13, 2021.   ECF No. 58.

Oscar did not file a Reply.

Oscar argues that the claims against it should be dismissed because the Court does

not have personal jurisdiction over Oscar and because Mr. Callier's allegations are insufficient to

raise a plausible inference that Oscar is liable.   Mot. 1–2, ECF No. 47.   The Court finds that it

does have jurisdiction over Oscar but that Mr. Callier's allegations are insufficient to raise an

inference that Oscar may be responsible for violations of the TCPA and the Texas Business and Commerce Code.   Accordingly, the Court will grant the Motion.

## BACKGROUND

The Court previously discussed the background of this case and of the TCPA in an earlier Memorandum and Opinion partially granting and partially denying a Motion to Dismiss filed by defendant National United.   *See* Mem. Op. and Order, ECF No. 65.   Below is a brief summary of the allegations as they relate to Oscar.

Mr. Callier alleges receipt of hundreds of phone calls made in violation of the TCPA.   Amend. Compl. 1, 8, ECF No. 33; *see also* Mem. Op. and Order, ECF No. 65.   Mr. Callier does not, however, allege that Oscar itself made all of these phone calls.   *See id.* at 8–22. Rather, he alleges that Oscar, as well as other defendants, is nonetheless responsible for the phone calls.   *Id.*   He states that three of the calls were made for the explicit purpose of soliciting health insurance through Oscar.   *Id.* at 11–23.   He requests the Court hold Oscar liable for multiple violations of the TCPA and of Texas state law.   *Id.*

Oscar moves to dismiss all claims in Mr. Callier's Amended Complaint.   Mot. 1–2, ECF No. 47.   First, Oscar asserts that the claims should be dismissed because the Court lacks personal jurisdiction over Oscar.   *Id.*   Oscar further asserts that even if the Court finds it has personal jurisdiction, "[Mr. Callier] failed to sufficiently plead that Oscar made any of the calls at issue . . . [or] that Oscar is liable for any of the calls at issue in this litigation through any cognizable theory of agency."   *Id.* at 2.

The Court will first address the question of personal jurisdiction before turning to the question of Oscar's potential responsibility for the phone calls in question.   The latter question raises again a legal issue the Court discussed in its earlier Opinion regarding National

2

United's Motion to Dismiss, namely the amount of factual support required to substantiate an allegation that an individual defendant is responsible for phone calls made potentially in violation of the TCPA.   *See generally* Mem. Op. and Order, ECF No. 65.   In examining the issue, the Court will again apply common law principles of agency law to the TCPA context.

## LEGAL STANDARD

Oscar moves to dismiss Mr. Callier's Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") and 12(b)(6) ("Rule 12(b)(6)").   Mot. 1, ECF No. 47.

### 1. Rule 12(b)(2)

Where a motion to dismiss contains a claim on both jurisdictional grounds and for failure to state a claim, the court should address the question of jurisdiction first.   *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (stating "[d]ismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit, whereas a dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same or in another forum.").

Rule 12(b)(2) requires dismissal if a court lacks personal jurisdiction over a defendant.   Fed. R. Civ. P. 12(b)(2).   In cases where "a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."   *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).   The plaintiff need only "present sufficient facts to make out a *prima facie* case supporting jurisdiction" if the court does not conduct an evidentiary hearing on the motion.   *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000)).   Further, the district court "may consider the [entire]

contents of the record at the time of the motion," not just "the assertions in the plaintiff's complaint" to determine whether the plaintiff has established a *prima facie* case for jurisdiction. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citing *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002)).

A court will have personal jurisdiction over the defendant "[i]f the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Texas's long-arm statute extends as far as constitutional due process permits. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992), *cert. denied*, 506 U.S. 867 (1992). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the nonresident defendant purposefully avails himself through establishing "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction: general and specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction is only applicable "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919). A corporation is "at home" in its "place of incorporation and principal place of business." *Id.*

In determining whether a court has specific jurisdiction over claims against a defendant, the Fifth Circuit applies a three-part test asking:

> "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the

4

> forum state or purposefully availed itself of the privileges of
> conducting activities there; (2) whether the plaintiff's cause of
> action arises out of or results from the defendant's forum-related
> contacts; and (3) whether the exercise of personal jurisdiction is
> fair and reasonable."

*Carmona*, 924 F.3d at 193 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th

Cir. 2006)).    The plaintiff bears the burden of establishing the first two prongs.    *Carmona*, 924

F.3d at 193.    If the plaintiff succeeds, "the burden shifts to the defendant to make a 'compelling

case' that the assertion of jurisdiction is not fair or reasonable."    *Id.*    All three prongs must be

satisfied for a court to assert specific personal jurisdiction.    *See Carmona*, 924 F.3d at 193, 197.

### 2.   Rule 12(b)(6)

Oscar also moves to dismiss Mr. Callier's Amended Complaint under Rule

12(b)(6).   "When faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all

factual allegations in the complaint as true.    We must also draw all reasonable inferences in the

plaintiff's favor."    *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal

citations omitted).    The Court considers only "the facts stated in the complaint and the

documents either attached to or incorporated in the complaint."    *Ferguson v. Bank of New York

Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (internal quotations omitted).

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief

can be granted."    Fed. R. Civ. P. 12(b)(6).    Rule 12(b)(6) is read in conjunction with Federal

Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."    *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64

(2009) (citing Fed. R. Civ. P. 8(a)(2)).

To meet the requirements of Rule 8, a complaint must contain "enough facts to

state a claim to relief that is plausible on its face."    *Bell Atlantic Corp. v. Twombly*, 550 U.S.

5

544, 570 (2007).   "A claim has facial plausibility when [a plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.* at 679.   Consistent with Rule 8(a)(2)'s requirement that the complaint "show" and not merely allege that a party is entitled to relief, the well-pleaded facts must do more than "permit the court to infer . . . the mere possibility of misconduct."   *Id.*

Facial plausibility requires "more than an unadorned . . . accusation."   *Iqbal*, 556 U.S. at 678.   Thus, "conclusory statements are 'not entitled to the assumption of truth.'"   *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).   A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."   *Id.* (quoting *Twombly*, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."   *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations and alterations omitted).

Highly general assertions directed at no one in particular are not sufficient to raise an inference of plausibility against a particular defendant.   *See Cobarobio v. Midland Cty.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102, at *9 (W.D. Tex. Jan. 7, 2015), aff'd, 695 F. App'x 88 (5th Cir. 2017) (stating that the *Iqbal* standard was not met by a complaint containing "global assertions of fault," "routinely lump[ing] all Defendants together without identifying actions of any individual Defendant," and failing to "set out the specific factual allegations . . . [relating to] any particular defendant.").   In the TCPA context, a plaintiff must provide specific facts connecting a specific, violative phone call to the specific defendant.   *See* Mem. Op. and Order 8, ECF No. 65.

6

### ANALYSIS

Mr. Callier raises four claims against Oscar in his Amended Complaint.    First, he alleges that Oscar violated the TCPA's restriction on using automated telephone equipment, 47 U.S. § 227(b).    Amend. Compl. 28–29, ECF No. 33; *see also* 47 U.S.C. § 227(b).    Second, he alleges that it failed to create and maintain an internal "do-not-call" list in compliance with 47 C.F.R. § 64.1200(d).    Amend. Compl. 29–30, ECF No. 33; *see also* 47 U.S.C. § 227(c), 47 C.F.R. §64.1200(d)(1)–(7).    Third, he alleges that it violated Texas Business and Commerce Code § 305.053, which makes violations of § 227 of the TCPA actionable under state law. Amend. Compl. 30–31, ECF No. 33; Tex. Bus. & Com. Code § 305.053.    Fourth, he alleges that it violated Texas state law by failing to hold a registration certificate before directing telephone solicitations to people located in Texas, as required by Texas Business and Commerce Code § 302.101.    Amend. Compl. 31, ECF No. 33; Tex. Bus. & Com. Code § 302.101.

Oscar asks the Court to dismiss all four claims in Mr. Callier's Amended Complaint.    Mot. 1–2, ECF No. 47.    Oscar asserts first that all of the claims should be dismissed because the Court lacks personal jurisdiction over Oscar since "Oscar is not at 'at home' in Texas" and "the lawsuit does not arise out of Oscar's contact with the forum state." *Id.*    Oscar further asserts that even if there is personal jurisdiction, "[Mr. Callier] failed to sufficiently plead that Oscar made any of the calls at issue in violation of the Telephone Consumer Protection Act . . . [or] that Oscar is liable for any of the calls at issue in this litigation through any cognizable theory of agency."    *Id.* at 2.

Mr. Callier argues that this Court does have personal jurisdiction over Oscar and that he has pleaded sufficient facts to support all four claims against Oscar.    *See* Resp. 2–3, ECF No. 58.

The Court first determines whether it has personal jurisdiction over Oscar. Finding that it does, the Court turns to the question of whether Mr. Callier failed to state a claim upon which relief can be granted.    To answer that question, the Court determines whether Mr. Callier has adequately alleged that (1) Oscar bears responsibility for the actions of the third party entity or entities who made the phone calls and (2) the phone calls do in fact violate the TCPA or state law.

Ultimately, the Court finds that Mr. Callier has not provided sufficient factual support for his assertion that Oscar bears responsibility for the phone calls, and thus it does not reach the question of whether the phone calls violate federal or state law.

## 1. The Court Has Personal Jurisdiction Over Oscar.

Personal jurisdiction may take two forms: general and specific.    The Court does not have general personal jurisdiction over Oscar as Oscar is not "at home" in the state of Texas. However, it does have specific personal jurisdiction because Oscar has purposefully availed itself of the benefits of doing business in the state.    Further, the litigation is related to Oscar's forum-related contacts because it involves soliciting health insurance to a Texas resident who was affected or harmed by the unlawful prerecorded telemarketing calls.

### a. The Court does not have general personal jurisdiction over Oscar.

The Court does not have general personal jurisdiction over Oscar.    A corporation is "at home" in its "place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 127 (citing *Goodyear*, 564 U.S. at 919).    It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).    General jurisdiction may, however, be established by showing that a party's contacts with the state are so "continuous and

8

systematic" as to render it "at home" in a particular state.[1]   *Daimler AG*, 571 U.S. at 127 (citing *Goodyear*, 564 U.S. at 919).   A company does not give the courts in a state general jurisdiction simply by doing business in that state.   *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (stating that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts" but instead "calls for an appraisal of a corporation's activities in their entirety.") (quoting *Daimler AG*, 571 U.S. at 139, n.20).[2]   "A corporation that operates in many places can scarcely be deemed at home in all of them."   *Daimler AG*, 571 U.S. at 139, n.20.

Oscar is incorporated in Delaware and its primary place of business is in New York.   Amend. Compl. 2, ECF No. 33; Mot. 1, ECF No. 47.   Mr. Callier has not established that Oscar has contacts with Texas that are so continuous and systematic as to render Oscar at home in the state.   *See Daimler AG*, 571 U.S at 139, n.20; *see also Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659 at *2 (W.D. Tx. Aug. 10, 2020) (stating that Mr. Callier "fail[ed] to discuss how either [defendant] is essentially at home in Texas . . . [and] therefore fails to carry his burden of establishing they are subject to this Court's general personal jurisdiction.").   Mr. Callier asserts that Oscar is "licensed and registered" in Texas to "provide life, accident, and health insurance to Texas Residents" and that Oscar employs people in Texas.

---

[1] The Supreme Court has upheld exerting general personal jurisdiction over a corporation only once since *International Shoe*.   In *Perkins*, the Court found general jurisdiction "because the defendant, a Philippine mining corporation, had ceased activity in the Philippines . . ., conducted all its business in Ohio, and the company president maintained an office in Ohio . . . ."   *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 230 (5th Cir. 2012) (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)).   The Court determined that Ohio had effectively become the company's "principal place of business" and thus Ohio could "exercise general personal jurisdiction over the company."   *Id.* at 231.

[2] In *BNSF Ry. Co.*, the defendant, a railroad company, had "over 2,000 miles of railroad track and more than 2,000 employees in Montana," which equated to only "about 6% of its total track mileage" and "less than 5% of its total work force."   *BNSF Ry. Co.*, 137 S. Ct. at 1554, 1559.   Thus, the Court concluded it was not "at home" in Montana.   *Id.* at 1559.

Resp. 1–2, ECF No. 58.   However, these contacts are not nearly enough to render Oscar "at home" in Texas.   Thus, Oscar is not subject to this Court's general jurisdiction.

### b. The Court does have specific personal jurisdiction over Oscar.

Oscar also argues that since Mr. Callier did not allege that Oscar itself made the calls at issue, the Court does not have specific jurisdiction over Oscar.   Mot. 2, ECF No. 47. However, in determining whether the Court has specific personal jurisdiction, the Court looks only at whether the lawsuit does in fact "arise out of [or relate to] Oscar's contact with the forum state."   Mot. 1–2, ECF No. 47.   Specifically, the Court will consider only whether the alleged phone calls regarding Oscar health insurance are related to Oscar's contacts in Texas.   The Court addresses the issue of Oscar's potential responsibility for the phone calls below, under the standards relevant to a Rule 12(b)(6) motion.   *See infra* 17–22.

Oscar seems to imply that a strict causal relationship between a defendant's contacts and a plaintiff's claims is required for specific jurisdiction.   However, no strict causal relationship is required, and the relationship between Oscar's contacts with Texas and Mr. Callier's claims is in fact strong enough to give the Court specific jurisdiction.   *See Ford Motor Co.*, 141 S. Ct. at 1026.

To determine whether specific jurisdiction applies, the Court will consider whether (1) Oscar has minimum contacts with Texas such that it "purposefully availed itself of the privileges of conducting activities" in Texas, (2) whether Mr. Callier's claims "arise out of or relate to" those contacts, and (3) whether the Court's "exercise of personal jurisdiction is fair and reasonable."   *See Carmona*, 924 F.3d at 193; *Ford Motor Co.*, 141 S. Ct. at 1026.

### i. Oscar's activities in Texas show that it purposefully availed itself of the privileges of conducting its business in the state, and those activities are related to Mr Callier's lawsuit.

Oscar purposefully availed itself through directing sales at Texas by registering with the Texas Department of Insurance, employing Texas residents to market and sell their product, and selling their product to Texas residents.   Recent district court decisions provide assistance in evaluating the existence of purposeful availment in situations similar to that presented by Mr. Callier.   In *Apogee Telecom, Inc. v. Univ. Video Servs., Inc.*, the Western District of Texas found that a defendant's "sales effort, negotiations, and eventual contract with the University of Mary Hardin-Baylor" demonstrated that the defendants "purposely directed sales activities toward the state and purposely availed itself of the privileges of conducting activities [in Texas] such that specific jurisdiction [was] appropriate."   No. A-17-CA-00672-SS, 2017 WL 10581125, at *1 (W.D. Tex. Nov. 20, 2017).   And in *Smith v. Truman Rd. Dev., LLC*, the Western District of Missouri identified that a defendant's "registration as a foreign limited liability corporation with the state" and "employees who operate out of [the State]" were supportive of finding the defendant purposefully directed their efforts at the forum state.   414 F. Supp. 3d 1205, 1218 (W.D. Mo. 2019).

The Supreme Court has recently clarified that the phrase "or relate to" in the specific jurisdiction standard, which requires that claims "arise out of *or relate to* the defendant's contacts with the forum," suggests that "some relationships will support jurisdiction without a causal showing."   *Ford Motor Co.*, 141 S. Ct. at 1026 (discussing *Bristol-Myers Squibb Co.*, 137 S. Ct. 1773).   While Mr. Callier does not provide a direct link between Oscar and the third party telemarketers, he does provide sufficient information linking Oscar and its health insurance to Texas.   Resp. 1–2, ECF No. 58.   In *Apogee Telecom, Inc.*, discussed above, the court found that the company's contacts, which included "[a] sales effort, negotiations, and [an] eventual contract," "directly related to the alleged misappropriation of Apogee's trade secrets at issue."

11

No. A-17-CA-00672-SS, 2017 WL 10581125, at *1 (W.D. Tex. Nov. 20, 2017).   Like the

defendant in that case, Oscar directs sales efforts at Texans, even if it did not contract with Mr.

Callier.   Resp. 2, ECF No. 58.   And like the defendant in *Smith*, Oscar registered with the

Texas Department of Insurance and is licensed to provide insurance to Texas residents.   *Id.* at

1–2.   It also employed Texas residents to market and sell its product to other Texas residents.

*Id.* at 2.

   Two well-known cases in which the Court did not allow specific jurisdiction over

a defendant do not help Oscar's claim.   In one case, claims were made by plaintiffs with no

connection whatsoever to the forum state, as they were non-residents who did not purchase, use,

or suffer harm from the product in the forum state.   *Ford Motor Co.*, 141 S. Ct. at 1031 (citing

*Bristol-Myers Squibb Co.*, 137 S. Ct. 1773).   In the other, it was the defendant that had no

connection whatsoever to the forum state, as it had "never traveled to, conducted activities

within, contacted anyone in, or sent anything or anyone to [the forum state]."   *Id.* (discussing

*Walden v. Fiore*, 571 U.S. 277 (2014)).   Neither of those situations apply here as Mr. Callier is

a Texas resident, the injury occurred in Texas, and Oscar specifically conducts business in

Texas.   The violative phone calls soliciting Oscar healthcare are also directly related to the

business Oscar conducts within the state of Texas, in sharp contrast with the situations presented

in *Bristol-Myers Squibb* and *Walden.*

   Oscar purposefully availed itself by registering with the Texas Department of

Insurance, employing Texas residents to market and sell their product, and selling their product

to Texas residents.   The litigation arises out of Oscar's forum-related contacts because it

concerns soliciting health insurance to Texas residents who were affected or harmed by the

unlawful prerecorded telemarketing calls regarding Oscar health insurance.    Further, these telemarketing calls resulted in the sale of Oscar health insurance to Texas residents.

### ii. It is fair and reasonable for the Court to exercise jurisdiction over Mr. Callier's claims against Oscar.

Since Mr. Callier has established a *prima facie* case supporting personal jurisdiction, Oscar has the burden of proving the assertion of jurisdiction is not fair or reasonable.    *See Carmona*, 924 F.3d at 193.    Oscar's assertion that it has "no relationship with Texas related to this matter that would make it reasonable for it to be required to defend a lawsuit in this forum" is contradicted by certain facts: (1) Oscar is licensed and registered with the Texas Department of Insurance, (2) Oscar employs Texas residents to solicit and sell health insurance on its behalf, and (3) Oscar sells to and supplies Texas residents with health insurance policies in Texas.    Mot. 10, ECF No. 47.    Oscar thus profits through the sale and purchase of its health insurance in Texas.    Thus, it is reasonable that Oscar should defend a suit in Texas relating to telemarketing calls made to sell insurance to Texas residents.

Oscar states that "to comply with the notions of fair play and substantial justice, 'the relationship between the defendant and the forum state must be such that it is reasonable to require the [company] to defend the particular suit."    *Id.* (citing *Hargrove v. Underwriters at Lloyd's*, 937 F. Supp. 595, 606 (S.D. Tex. 1996)).    Since the Court finds it reasonable for Oscar to defend a suit relating to Oscar health insurance, Oscar has failed to carry its burden of proving assertion of jurisdiction would not be fair and reasonable in this case and the Court may assert specific personal jurisdiction over Oscar in this matter.

**2. The Court Will Focus Its Analysis on the Three Phones Calls Connected by Specific Factual Allegations to Oscar.**

The Court now turns to Mr. Callier's Amended Complaint.   While the Court takes all assertions as true as required for a Rule 12(b)(6) motion, it disregards highly generalized assertions of fault aimed at no defendant in particular.   After doing so, the Court is left with specific allegations against Oscar relating to three phone calls.

**a. The Court will not consider generalized allegations against all defendants.**

The Court will continue its analysis by looking to Mr. Callier's Amended Complaint, taking all his assertions as true as required for a Rule 12(b)(6) motion.   *Lormand*, 565 F.3d at 232.   However, the Court will disregard any "mere global assertions of fault" that have no asserted factual connection to Oscar.   *Cobarobio*, 2015 WL 13608102, at *9.   Such statements will be treated as "naked assertions devoid of further factual enhancement."   *Iqbal*, 556 U.S. at 678.

Mr. Callier asserts that, while in El Paso County, he received "at least 204 automated phone calls with prerecorded voice messages" starting "[o]n or about July 21, 2020," and continuing through the date of filing.   Amend. Compl. 8, ECF No. 33.

In his Response, Mr. Callier suggests that "Oscar has been aware of the unwanted phone calls being made on its behalf for more than six months and has done nothing to stop the calls because the calls benefit Defendant Oscar financially."   Resp. 3, ECF No. 58.   He further asserts that Oscar is aware of the sales agents and insurance agencies selling Oscar's products but has not taken reasonable steps to stop the illegal telemarketing, thereby ratifying the illegal behavior.   *Id.*

Most of the allegations in the Amended Complaint are highly generalized rather than directed at particular defendants.   *See* Amend. Compl. 14, ECF No. 33.   Mr. Callier

14

asserts that "[d]efendants did nothing to stop the harassing phone calls despite being alerted via written demand to cease the phone calls." *Id.* at 14.   He goes on to claim that "[d]efendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the misleading sales practices and unlawful robocalling" and states that "[d]efendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy." *Id.*

General allegations lumping all defendants together, without identifying the specific actions of individual defendants, will not suffice to raise a plausible inference of liability against an individual defendant.   *See Cobarobio*, 2015 WL 13608102, at *9.   A pleading must provide specific factual allegations of violations against specific defendants.   *See id.* (citing *Iqbal*, 556 U.S. at 678).   Using the "collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom" fails to meet the fair notice standard under Rule 8.   *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (holding that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8's] minimum standard").   Thus, the Court will not consider Mr. Callier's legal assertions against defendants generally when they are not supported by factual allegations directed at specific defendants.

Mr. Callier asserts in his Response that Oscar itself is aware of the unwanted phone calls.   Resp. 3, ECF. No. 58.   However, assertions in the Response cannot make up for shortcomings in the Amended Complaint itself.   The Court cannot consider new allegations made outside of the complaint.   *See Ferguson*, 802 F.3d at 780.   Additionally, factually unsupported allegations cannot establish an agency relationship between Oscar and the third-party telemarketers.   *See infra* 18, 20–22.

**b. The Amended Complaint contains factual assertions about Oscar only when discussing three phone calls.**

Mr. Callier makes assertions specifically against Oscar only with regard to three calls.   These calls were made on November 5 ("the November 5 call"), December 15, 2020 ("the December 15 call"), and January 21, 2021 ("the January 21 call").    Amend. Compl. 10–12, ECF No. 33.   The Court will therefore focus its analysis on these three phone calls.

### i. The November 5 Call

On November 5, 2020, Mr. Callier received a phone call from area code 915 with a prerecorded message in Spanish regarding the solicitation of health insurance.   *Id.* at 10. After Mr. Callier pressed one to speak with a live representative, he asked Nubia Herrera ("Ms. Herrera"), a Spanish speaker, to translate for him.   *Id.* at 10–11.   Ms. Herrera, who needed health insurance, "was solicited and purchased a health insurance policy from Oscar Insurance." *Id.* at 11.   "On November 23, 2020, Herrera received a welcome letter from Oscar Insurance dated November 17, 2020" which included her policy number.   *Id.*

### ii. The December 15 Call

On December 15, 2020, Mr. Callier received a phone call from area code 210 with a prerecorded message in Spanish regarding the solicitation of health insurance.   *Id.* Barbara Rios ("Ms. Rios"), a Spanish speaker, translated the message for Mr. Callier and then, at Mr. Callier's request, spoke to the live representative to whom she was connected after she pressed a number as the prerecorded message instructed.   *Id.*   The representative "informed Ms. Rios she would be hanging up and 'calling back from a different number so [Ms. Rios could] talk to an agent.'"   *Id.*   Mr. Callier immediately received a follow-up call from 786-650-1617, a number belonging to National United.   *Id.* at 11–12.   During that phone call, a

person solicited her to purchase health insurance through Oscar Management Corporation.   *Id.*
at 11.

### iii. The January 14 Call

On January 14, 2021, Mr. Callier received another phone call with a prerecorded
message in Spanish regarding the solicitation of health insurance.   *Id.* at 12.   Zuzseth Ramirez
("Ms. Ramirez"), a Spanish speaker, translated the message this time.   *Id.*   During this call,
"Ms. Ramirez enrolled in a health insurance policy issued by Oscar Insurance."   *Id.*   In
February 2021, Ms. Ramirez received her "health insurance policy . . . from Oscar Insurance."
*Id.*   Mr. Callier identified Maria Allen Cardona, an agent of Health One Corporation and owner
of Allen Insurance Services, Inc., as the person who sold Ms. Ramirez the Oscar Insurance
policy.   *Id.*

In evaluating whether Oscar is liable for violations of the TCPA and Texas state
law, the Court will consider only the details of these three calls.

### 3. Mr. Callier's Complaint Does Not Provide a Basis for a Plausible Inference that an Agency Relationship Exists Between Oscar and the Entities Who Made the Phone Calls.

Mr. Callier does not allege that Oscar itself made the calls.   *See id.* at 10–12.
He does not even assert that Oscar was working in concert with the telemarketers to sell the
health insurance.   *See id.*; *see also* Resp. 3, ECF No. 58.   Thus, before the Court addresses the
question of whether the three phone calls violated the TCPA or Texas state law, the Court must
determine whether Mr. Callier has provided a sufficient basis for a plausible inference that Oscar
could bear responsibility for those phone calls.

Oscar argues that Mr. Callier "failed to sufficiently plead Oscar made any of the
calls at issue . . . [and] that Oscar is liable for any of the calls . . . through any cognizable theory

of agency."   Mot. 2, ECF No. 47.   Oscar further alleges that Mr. Callier only provides "vague

allegations" against all defendants for being "collectively responsible for the calls" and fails to

provide facts specifically linking Oscar to any of the other defendants or third party entities.   *Id.*

   The Court ultimately agrees with Oscar.   The Court reaches that conclusion after

applying common law agency principles to the practical realities of TCPA enforcement, as it did

in a Memorandum and Opinion previously issued in this case.   *See* Mem. Op. and Order, ECF

65.   In evaluating the claims against National United, the Court held that while Mr. Callier did

not explicitly allege a relationship between National United and the telemarketers, Mr. Callier

did provide enough factual support to infer a relationship based on the "proximity and

relatedness" of an initial call to Mr. Callier's phone and a subsequent call from a National United

phone number.   *Id.* 13–14.   Coincidentally, that initial call was the December 15 call discussed

above relating to the sale of an Oscar policy.   *See supra* 16–17.   The Court again recites the

relevant principles below.   The Court concludes that unlike the allegations provided against

National United, the allegations made against Oscar do not provide a sufficient basis to infer a

relationship with the telemarketers that creates a basis for liability.

   A person can be held directly liable when he or she initiates a call that violates the

TCPA.   *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013).   Additionally, a

person or entity "may be held vicariously liable under federal common law agency principles for

a TCPA violation by a third party telemarketer."   *Id.*

   An agency relationship is "the fiduciary relationship that arises when one person

(a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the

principal's behalf and subject to the principal's control."   Restatement (Third) of Agency §

1.01.   Whether an agency relationship exists is generally a question of fact.   *Stripling v.*

18

*Jordan Prod. Co., LLC*, 234 F.3d 863, 870 (5th Cir. 2000); *see also Seaboard Props., Inc. v. Bunchman*, 278 F.2d 679, 681 (5th Cir. 1960) ("Generally speaking, the question of whether an agency relationship exists is a question of fact to be resolved by the jury").   Moreover, "the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called."   *Stripling*, 234 F.3d at 870 (quoting 3 Am. Jur. 2d *Agency* § 21 (1962)).

Where a court requires additional facts to "know more about the course of the parties' dealings and the generally expected course of business in the field" to determine the issue of whether an agency relationship exists, it is "inappropriate for resolution on a motion to dismiss."   *Cunningham v. Rapid Response Monitoring Serv., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017).   A plaintiff need not "illuminate every corner of defendants' relationships at the pleading stage," but must merely "ple[a]d facts sufficient to support a plausibl[e] claim for relief."   *Id.*   Thus, the Court looks only at whether Mr. Callier has sufficiently pled the plausible existence of an agency relationship between Oscar and the telemarketer which made the allegedly violative phone call; it does not now determine whether such relationship truly exists.

A defendant may be vicariously liable for a telemarketer's violation of the TCPA's restriction on the use of automated equipment where a plaintiff can show an agency relationship between a defendant and a third-party telemarketer.   *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6586–89.   Consumers may acquire evidence of this nature through discovery.   *Id.* at 6592–93.   The FCC has stated that in "actions to enforce section 227(b) [which limits the use of automated equipment provision] or actions to enforce do-not-call

restrictions under section 227(c) [which protects subscribers' privacy rights], . . . nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call." *Id.* at 6593.

Under a theory of ratification, a defendant "may be liable for the acts of another . . . if it ratifies those acts by knowingly accepting their benefits." *Id.* at 6587.   "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents."   Restatement (Third) of Agency § 4.01.   However, for the ratification to be binding, the person must ratify the act with "knowledge of material facts involved in the original act."   Restatement (Third) of Agency § 4.06.

Mr. Callier states that the telemarketers were selling Oscar insurance policies. Amend. Compl. 8–22, ECF No. 33.   However, unlike his allegations against other named defendants, which are supported by facts linking those defendants to the telemarketer calls, his allegations against Oscar do not link Oscar to the calls.   *Id.*   Mr. Callier claims Oscar health insurance policies were issued, but he does not assert that Oscar itself issued the policies directly nor that it made the calls in question.   *See id.* at 10–12.   A "court cannot reasonably infer an agency relationship from the mere fact that telemarketing calls were made on behalf of [defendants]" without a plaintiff alleging the nature of the relationship between the telemarketers and defendants.   *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659 at *3 (W.D. Tx. Aug. 10, 2020).   Further, even where a plaintiff is "presented with a contract to join [the defendant] and [the defendant] would have gained a customer as a result of the calls," that is "not enough to show that an agency relationship exist[s]" between a defendant and telemarketers.

*Cunningham v. Lifestyles Development, LLC*, NO. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 at *4 (E.D. Tx. Aug. 8, 2019).

        In *SunPath Ltd.*, Mr. Callier—the very same Mr. Callier—made a conclusory allegation that the defendants were vicariously liable because they were "the direct beneficiaries of the illegal telemarketing calls."    No. EP-20-CV-00106-FM, 2020 WL 10285659, at *1 (W.D. Tx. Aug. 10, 2020).    The court stated that even though it might "be reasonable to believe a telemarketer soliciting business on behalf of an entity is acting as an agent, the belief must be traceable to the conduct of the principal."    *Id.* at *4.    The court, holding that "knowledge is necessary to meet the standard for ratification," and noted that even though the defendants benefited from the telemarketing calls, the plaintiff never asserted that the defendants knew the telemarketers were acting in violation of the TCPA.    *Id.*    Since the plaintiff did not allege that the relationship between the telemarketers and the defendants was "traceable to the conduct of the [defendants]," the court concluded it could not "reasonably infer an agency relationship from the mere fact that telemarketing calls were made on behalf of [defendants]."    *Id.* at *3.

        In his claim against Oscar, Mr. Callier has once again failed to assert any facts that would make the telemarketers' actions "traceable to the conduct of" the defendant.    *See* Amend. Compl. 8–22, ECF No. 33.    He also fails to assert that Oscar knew of the violations and failed provide any factual basis for a plausible inference that Oscar knew of them.    *Id.*    Mr. Callier's Amended Complaint suggests that defendants other than Oscar—specifically National United, Maria Allen Cardona, Health One Corporation, and Allen Insurance Services, Inc.—sold the Oscar policies mentioned.    *Id.* at 12–13.    Mr. Callier identifies specific individual agents who sold Oscar policies, but he does not allege that those agents are employees of Oscar or are otherwise under its control.    *Id.*

Further, Mr. Callier acknowledges that he does not assert any relationship between Oscar and the third-party telemarketers in his Response, stating he "cannot allege the exact specific relationship Oscar holds with the anonymous robocallers."   Resp. 3, ECF No. 58. Merely benefitting from the calls is not enough to establish an agency theory required to hold Oscar vicariously liable for a third-party telemarketer.   *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6593 (F.C.C. May 9, 2013) (stating "we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under . . . section 227(b).).   Even though Oscar issued policies to Ms. Herrera and Ms. Ramirez, gaining two customers, Mr. Callier has not provided a sufficient factual basis for the Court to infer the existence of an agency relationship between Oscar and the entities making the phone calls in question.   *See* Amend. Compl. 10–12, ECF No. 33; *see also Cunningham v. Lifestyles Development, LLC*, NO. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 at *4 (E.D. Tx. Aug. 8, 2019).

Thus, Mr. Callier has failed to sufficiently plead any applicable agency theory that would render Oscar vicariously liable for the telemarketers' TCPA violations and the Court will dismiss the TCPA claims against it.

### 4. Mr. Callier Does Not Adequately Plead that Oscar Violated Texas Business and Commerce Code § 305.053.

Oscar asserts that Mr. Callier did not adequately plead a violation of the Texas Business and Commerce Code § 305.053 because Mr. Callier "does not allege facts sufficient to plausibly state a claim that Oscar violated the TCPA."   Mot. 19, ECF No. 47.   The Court agrees: Mr. Callier's TCPA claims fail and thus his § 305.053 claim must fail as well.

The Texas Business and Commerce Code creates a right of action under state law for "a person who receives a communication that violates 47 U.S.C. Section 227 [or] a regulation

adopted under that provision . . . against the person who originates the communication . . . ."

Tex. Bus. & Com. Code § 305.053(a).   Therefore, the elements of § 305.053 "correspond to the

necessary elements for a TCPA claim."   *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC,

2021 WL 2688622 at *6 (W.D. Tx. May 10, 2021).

   Since Mr. Callier's claims under the TCPA will be dismissed, his claim under §

305.053 should be dismissed as well.   *See id.*

### 5. Mr. Callier's Claim under Texas Business and Commerce Code § 302.101 Fails Because Mr. Callier Does Not Establish that Oscar Can Plausibly be Held Responsible for the Phone Calls.

   Oscar asserts that Mr. Callier did not adequately plead a violation of the Texas

Business and Commerce Code § 302.101 because Mr. Callier "does not allege facts sufficient to

plausibly claim that Oscar made the calls at issue."   Mot. 20, ECF No. 47.   The Court agrees.

   Texas Business and Commerce Code § 302.101 states a person (1) "may not make

a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in

[Texas]," (2) "unless the [person] holds a registration certificate for the business location from

which the telephone solicitation is made."   Tex. Bus. & Com. Code § 302.101(a).   Mr. Callier

mentions the statute only in a general, conclusory allegation that defendants violated it by

"engag[ing] in continuous and repetitive telephone solicitation of [Mr. Callier] without obtaining

a registration certificate from the Office of the Secretary of State."   *Id.* at 31.   Mr. Callier

never alleges that Oscar specifically made the calls at issue and, as discussed above, fails to

establish the plausibility of an agency relationship between Oscar and the telemarketers making

the calls.   *See supra* 21–22; Amend. Compl. 8–22, ECF No. 33.

   Thus, the Court will dismiss Mr. Callier's § 302.101 claim.

## CONCLUSION

Oscar moves to dismiss all claims Mr. Callier has asserted in his Amended Complaint.   The Court finds that this Court does have specific personal jurisdiction over Oscar. However, Mr. Callier has failed to sufficiently plead his TCPA § 227(b) claims, his TCPA § 227(c) claims, his Texas Business and Commerce Code § 305.053 claims, and his Texas Business and Commerce Code § 302.101 claims.   Therefore, the Court finds that Oscar's Motion to Dismiss should be granted pursuant to Rule 12(b)(6).

Accordingly, **IT IS HEREBY ORDERED** that Defendant Mulberry Management Corporation d/b/a Oscar Management Corporation's "Motion to Dismiss" is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims against Defendant Mulberry Management Corporation d/b/a Oscar Management Corporation are **DISMISSED WITH PREJUDICE.**

SIGNED this 26th day of **January 2022.**

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**