IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-21-CV-71-DB** |
| | § | |
| **NATIONAL UNITED GROUP, LLC,** | § | |
| **et al.,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS LPV SERVICES, INC., LIZA POLANCO, ALLEN INSURANCE SERVICES, INC., AND MARIA ALLEN CARDONA'S MOTION TO DISMISS

On this day, the Court considered Defendants LPV Services, Inc. ("LPV"), Liza Polanco (the CEO of LPV, hereinafter "Ms. Polanco"), Allen Insurance Services, Inc. ("Allen Insurance"), and Maria Allen Cardona's (CEO of Allen Insurance, hereinafter "Ms. Cardona") "Motion to Dismiss" ("Motion"), filed in the above-captioned case on December 1, 2021. ECF No. 68. Therein, Ms. Polanco and Ms. Cardona[1] ask that the Court dismiss Plaintiff Brandon Callier's ("Mr. Callier") First Amended Complaint ("Amended Complaint"), ECF No. 33, filed on June 24, 2021. *Id.* Mr. Callier alleges that a multitude of defendants, including Ms. Polanco and Ms. Cardona, violated the Telephone Consumer Protection Act ("TCPA") and Texas consumer protection statutes by making repeated phone calls to Mr. Callier's cellular phone using a robocalling system. *See* Am. Compl. ¶¶ 151–168, ECF No. 33. Mr. Callier

---

[1] In his Amended Complaint, Mr. Callier notes that Maria Cardona and Liza Polanco are, respectively, President of Allen Insurance and CEO of LPV. He does not address the specific responsibility of either LPV or Allen Insurance for the alleged violations. Am. Compl. ¶¶ 11, 15. The Motion also makes no distinction between the liabilities of the individual defendants and the companies they own. The Court will not therefore make any distinction either; it will use "Ms. Cardona" and "Ms. Polanco" as shorthand for the individuals and the companies they run, and it will use "Ms. Polanco and Ms. Cardona" as shorthand for all four defendants.

responded to the Motion, ECF No. 70, and in turn Ms. Cardona and Ms. Polanco filed a Reply, ECF No. 71.

Mr. Callier alleges that Ms. Polanco and Ms. Cardona, respectively the heads of LPV and Allen Insurance, have been identified as the insurance agents responsible for policies sold to him through unsolicited and, he claims, illegal, phone calls.   Am. Compl. ¶¶ 80, 81, ECF No. 33.   Ms. Polanco and Ms. Cardona argue that the claims against them should be dismissed because Mr. Callier does not provide a sufficient factual basis for the Court to infer that they made the allegedly illegal phone calls or are in any way responsible for them.   Mot. 1–2, ECF No. 68.

The Court finds that Mr. Callier's allegations are sufficient to raise an inference that Ms. Polanco but not Ms. Cardona may be responsible for certain violations of the TCPA and the Texas Business and Commerce Code.   Accordingly, the Court will deny the Motion in part and grant the Motion in part.

## BACKGROUND

The Court previously discussed the background of this case and of the TCPA in an earlier Memorandum and Opinion partially granting and partially denying a Motion to Dismiss filed by defendant National United.   *See* Mem. Op. and Order, ECF No. 65.   Below is a brief summary of the allegations as they relate to Ms. Polanco and Ms. Cardona.

Mr. Callier alleges receipt of hundreds of phone calls made in violation of the TCPA.   Amend. Compl. ¶ 41, 92, ECF No. 33; *see also* Mem. Op. and Order, ECF No. 65. Mr. Callier does not, however, allege that Ms. Cardona or Ms. Polanco personally made any of these phone calls.   *See id.* at 8–22.   He alleges that they are nonetheless responsible for at least some of the phone calls.   *Id.* ¶¶ 103, 109.   Mr. Callier purchased multiple health insurance

policies in response to the phone calls, presumably in an effort to locate the entity or entities responsible for the calls.   *Id.* ¶¶ 54ff.   He states that a call to the National Health Insurance Marketplace revealed that one of the policies had been sold by Defendant Ms. Polanco.   *Id.* ¶ 80.   He states that another policy was sold by Ms. Cardona.   *Id.* ¶ 81.   He requests the Court thus hold Ms. Cardona, Ms. Polanco and the companies they own liable for violations of the TCPA and of Texas state law.   *Id.* at ¶¶ 151–168.

Ms. Polanco and Ms. Cardona move to dismiss all claims in Mr. Callier's Amended Complaint.   Mot. 1, ECF No. 68.   They assert that "Plaintiff does not allege Defendants physically made the calls at issue nor does he establish an agency relationship between Defendants and the purported unnamed, third-party telemarketers he alleges made such calls."   *Id.* at 2.

Mr. Callier does not assert that Ms. Polanco and Ms. Cardona made the phone calls at issue, and therefore the Court will not address the issue.   *See, e.g.*, Resp. 3–4, ECF No. 70 (referring to an "anonymous robocaller," a "call center making the robocall," and "anonymous solicitors").   The issues before the Court are 1) whether Mr. Callier has sufficiently alleged an agency relationship between the entities making the phone calls in question and Ms. Cardona or Ms. Polanco, and 2) whether those phone calls violate the TCPA and state law.   On the first of those issues, Ms. Polanco and Ms. Cardona state that "Plaintiff does not allege with any factual support that Defendants instructed or directed the purported unnamed, third-party telemarketers to place the calls at issue to him—nor does he allege with any factual support that Defendants controlled the manner and means by which the purported third-party telemarketers alleged placed such calls."   Mot. 8, ECF No. 68.   They do not directly address the second.

3

The Court will again address a question it addressed in its earlier Opinion regarding National United: how does a complainant show that an entity is responsible for an anonymous phone call? *See* Mem. Op. and Order, ECF No. 65.   To answer the question, the Court will again apply common law principles of agency law to the TCPA context.

## LEGAL STANDARD

Ms. Polanco and Ms. Cardona move to dismiss Mr. Callier's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").   Mot. 1, ECF No. 68.

"When faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true.   We must also draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal citations omitted).   The Court considers only "the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (internal quotations omitted).

Rule 12(b)(6) permits dismissal if a party fails "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citing Fed. R. Civ. P. 8(a)(2)).

To meet the requirements of Rule 8, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when [a plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   "Determining whether a complaint states a plausible claim

4

for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.   Consistent with Rule 8(a)(2)'s requirement that the complaint "show" and not merely allege that a party is entitled to relief, the well-pleaded facts must do more than "permit the court to infer . . . the mere possibility of misconduct." *Id.*

Facial plausibility requires "more than an unadorned . . . accusation." *Iqbal*, 556 U.S. at 678.   Thus, "conclusory statements are 'not entitled to the assumption of truth.'" *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).   A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations and alterations omitted).

Highly general assertions directed at no one in particular are not sufficient to raise an inference of plausibility against a particular defendant.   *See Cobarobio v. Midland Cty.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102, at *9 (W.D. Tex. Jan. 7, 2015), aff'd, 695 F. App'x 88 (5th Cir. 2017) (stating that the *Iqbal* standard was not met by a complaint containing "global assertions of fault," "routinely lump[ing] all Defendants together without identifying actions of any individual Defendant," and failing to "set out the specific factual allegations . . . [relating to] any particular defendant.").   In the TCPA context, a plaintiff must provide specific facts connecting a specific, violative phone call to the specific defendant.   *See* Mem. Op. and Order 8, ECF No. 65.

## ANALYSIS

Much of the Analysis below will closely track the Court's analysis of the underlying issues in the Orders already issued in this case. *See* Mem. Op. on National United's Motion to Dismiss, ECF No. 65; Mem. Op. on Oscar's Motion to Dismiss, ECF No. 75.

Mr. Callier raises four claims in his Amended Complaint against a large group of defendants including Ms. Cardona and Ms. Polanco. First, he alleges violations of the TCPA's restriction on using automated telephone equipment, 47 U.S. § 227(b). Am. Compl. ¶¶ 151–156, ECF No. 33; *see also* 47 U.S.C. § 227(b). Second, he alleges that failure by the defendants to create and maintain an internal "do-not-call" list in compliance with 47 C.F.R. § 64.1200(d). Am. Compl. ¶¶ 157–160, ECF No. 33; *see also* 47 U.S.C. § 227(c), 47 C.F.R. §64.1200(d)(1)–(7). Third, he alleges that they violated Texas Business and Commerce Code § 305.053, which makes violations of § 227 of the TCPA actionable under state law. Am. Compl. ¶¶ 161–164, ECF No. 33; Tex. Bus. & Com. Code § 305.053. Fourth, he alleges that they violated Texas state law by failing to hold a registration certificate before directing telephone solicitations to people located in Texas, as required by Texas Business and Commerce Code § 302.101. Am. Compl. ¶¶ 165–168, ECF No. 33; Tex. Bus. & Com. Code § 302.101.

Ms. Polanco and Ms. Cardona ask the Court to dismiss Mr. Callier's Amended Complaint. Mot. 1, ECF No. 68. The Court will not dismiss the Complaint in its entirety. Specifically, it will not dismiss Mr. Callier's claim that Ms. Polanco violated the TCPA's rules about automated telephone equipment, and it will not dismiss a state-law claim against Ms. Polanco based on the TCPA. However, it will dismiss as lacking factual support Mr. Callier's claims that Ms. Cardona violated the TCPA, and it will dismiss his claims that either Ms.

6

Polanco Ms. Cardona did not properly maintain a do-not-call list or fail to possess a required registration certificate.

### 1. For Purposes of Ms. Polanco and Ms. Cardona's Motion, the Court Considers the Complaint Only as it Relates to Ms. Polanco and Ms. Cardona.

The Court disregards Mr. Callier's highly generalized assertions of fault aimed at no defendant in particular.   It is left with allegations against Ms. Polanco and Ms. Cardona relating to two particular phone calls.

### a. The Court will not consider generalized allegations against all defendants.

Because the Court is addressing a Rule 12(b)(6) motion, it takes all of Mr. Callier's assertions as true.   *Lormand*, 565 F.3d at 232.   However, it disregards any "mere global assertions of fault" that have no asserted factual connection to Ms. Polanco and Ms. Cardona.   *Cobarobio*, 2015 WL 13608102, at *9.   Such statements will be treated as "naked assertions devoid of further factual enhancement."   *Iqbal*, 556 U.S. at 678.

Mr. Callier asserts that, while in El Paso County, he received "at least 204 automated phone calls with prerecorded voice messages" starting "[o]n or about July 21, 2020," and continuing through the date of filing.   Am. Compl. ¶ 41, ECF No. 33.   He later claims that "[d]efendants did nothing to stop the harassing phone calls despite being alerted via written demand to cease the phone calls."   *Id.* at ¶ 96.   He also claims that "[d]efendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the misleading sales practices and unlawful robocalling" and states that "[d]efendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy."   *Id.* ¶¶ 103–04.

Allegations like these which lump all defendants together, without identifying specific actions of individual defendants, will not suffice to raise a plausible inference of liability against any individual defendant.   *See Cobarobio*, 2015 WL 13608102, at *9.   A pleading

must provide specific factual allegations of violations against specific defendants.   *See id.*

(citing *Iqbal*, 556 U.S. at 678).   Using the "collective term '[d]efendants' . . . with no distinction

as to what acts are attributable to whom" fails to meet the fair notice standard under Rule 8.

*Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also*

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (holding that "[b]y lumping all

the defendants together in each claim and providing no factual basis to distinguish their conduct,

[the] complaint failed to satisfy [Rule 8's] minimum standard").   Thus, the Court will not

consider those of Mr. Callier's assertions that are not supported by factual allegations directed at

Ms. Cardona or Ms. Polanco.

> **b.  The Amended Complaint contains only limited assertions specifically
> directed at Ms. Polanco and Ms. Cardona.**

Ms. Polanco and Ms. Cardona argue that Mr. Callier "only casually references

Defendants in the Complaint and only on very limited occasion" and that the references only

"relate to allegations that are introductory in nature."   Mot. 4, ECF No. 68.   While it is true

that specific references to Ms. Polanco and Ms. Cardona are "limited," they do relate to specific

phone calls and actions.   Mr. Callier's assertions against Ms. Polanco and Ms. Cardona arise

out of two particular transactions, one arguably implicating Ms. Cardona and the other arguably

implicating Ms. Polanco.   In evaluating whether Ms. Polanco and Ms. Cardona are liable for

violations of the TCPA and Texas state law, the Court will consider only these allegations.

On October 23, 2020, Mr. Callier received a phone call from a "spoofed caller

ID" and handed the phone to a Spanish speaker, who he instructed "to translate so he could

purchase a health insurance policy . . . in order to get concrete proof of the origin of the calls in

an attempt to get the harassing calls to stop."   Am. Compl. ¶ 53–54, 58, ECF No. 33.   Mr.

Callier provided bank account information and thereby purchased a health insurance policy with

AM Better. *Id.* ¶ 59.   In February of 2021, Mr. Callier called the National Health Insurance Marketplace and was informed that "the agent who sold his AM Better health insurance policy was Liza Polanco with a National Producer number of 18578769." *Id.* ¶ 80.

On January 14, 2020, Mr. Callier received an "automated phone call with a pre-recorded artificial voice message in Spanish soliciting health insurance." *Id.* ¶ 75.   Mr. Callier asked Ms. Zuzseth Ramirez, a Spanish speaker, "to translate in order to ascertain who was behind the calls." *Id.* ¶ 76.   Ms. Ramirez then purchased a policy. *Id.* ¶ 77.   Mr. Callier alleges that "[Ms.] Cardona sold the policy purchased by Ms. Ramirez." *Id.* ¶ 81.   Mr. Callier does not, as he did with regard to Ms. Polanco, state how he came to the belief that Ms. Cardona sold the policy. *See id.* ¶¶ 80–81.   In his Response to Ms. Polanco and Ms. Cardona's Motion, Mr. Callier repeats his allegations against Ms. Cardona but still fails to provide any factual basis for his assertion that Ms. Cardon was responsible for the sale of a policy on January 14. *See, e.g.*, Resp. 5, ECF No. 70 (asserting without explanation that "Defendant Cardon is the agent of record who sold the insurance policy").

### 2. The Amended Complaint Provides a Basis for an Inference that Ms. Polanco, but Not Ms. Cardona, May Be Responsible for a Phone Call Received by Mr. Callier.

Mr. Callier does not directly allege that Ms. Polanco and Ms. Cardona made any phone calls themselves.   He asserts that Ms. Polanco and Ms. Cardona should nonetheless be held responsible for the phone calls, and alleges to that end that Ms. Polanco and Ms. Cardona each "entered into a contract or agreement, the terms of which included payments and compensation to the telemarketers that called [him]." *Id.* ¶¶ 89, 91.   Ms. Polanco and Ms. Cardona argue that the claims should be dismissed because Mr. Callier cannot establish any agency relationship between themselves and the "unnamed, third-party telemarketers." Mot. 7, ECF No. 68.

9

The question before the Court is whether, on the basis of the factual assertions discussed previously, it can make a plausible inference that Ms. Cardona or Ms. Polanco can be held responsible for any of the phone calls.    To answer that question it must consider the common law agency principles and the practical realities of TCPA enforcement.[2]

### A. An individual or entity may be vicariously liable for third-party violations of the TCPA.

In addition to being directly liable, a person or entity "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third party telemarketer."    *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013).    An agency relationship under the common law is "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control."    Restatement (Third) of Agency § 1.01 (2006).    Whether an agency relationship exists is generally a question of fact.    *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 870 (5th Cir. 2000); *see also Seaboard Props., Inc. v. Bunchman*, 278 F.2d 679, 681 (5th Cir. 1960) ("Generally speaking, the question of whether an agency relationship exists is a question of fact to be resolved by the jury").    Moreover, "the manner in which the parties designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called."    *Stripling*, 234 F.3d at 870 (quoting 3 Am. Jur. 2d *Agency* § 21 (1962)).

Where a court requires additional facts to "know more about the course of the parties' dealings and the generally expected course of business in the field" to determine the

---

[2] The Court discussed both those principles and those realities in a Memorandum Opinion and Order previously issued in this case.    Mem. Op. and Order, ECF 65.

issue of whether an agency relationship exists, it is "inappropriate for resolution on a motion to

dismiss." *Cunningham v. Rapid Response Monitoring Serv., Inc.*, 251 F. Supp. 3d 1187, 1199

(M.D. Tenn. 2017).    A plaintiff need not "illuminate every corner of defendants' relationships

at the pleading stage," but must merely "ple[a]d facts sufficient to support a plausibl[e] claim for

relief." *Id.*   Thus, the Court looks only at whether Mr. Callier has sufficiently pled the

plausible existence of an agency relationship between Ms. Polanco or Ms. Cardona and any

telemarketer who made an allegedly violative phone call; it does not now determine whether

such relationship truly exists.

### B. Ms. Polanco, but Not Ms. Cardona, Could be Held Vicariously Liable for the Phone Calls.

The Court concludes that Mr. Callier's allegations provide a sufficient basis for an

inference that an agency relationship exists between at least one anonymous caller and Ms.

Polanco, but not between any caller and Ms. Cardona.

In its earlier order evaluating Mr. Callier's claims as they related to National

United, the Court held that while Mr. Callier did not explicitly allege a relationship between

National United and the telemarketers, Mr. Callier did provide enough factual support to infer a

relationship based on the "proximity and relatedness" of an initial call to Mr. Callier's phone and

a subsequent call from a National United phone number.   Mem. Op. and Order 13–14, ECF No.

65.   Similarly, the Court now finds that Mr. Callier has provided enough factual support to infer

a relationship between Ms. Polanco and an anonymous caller.   He has not, however, done so for

Ms. Cardona.

Mr. Callier has made specific, factually supported allegations against Ms. Polanco

and has linked her to a particular sale growing out of a particular phone call, as he did with

National United.   Ms. Polanco is both listed in a national database as being responsible for the

11

act of selling of insurance policies, an act which included—and arguably, consisted entirely of—

a robocall.   Am. Compl. ¶ 80, ECF No. 33.   She is linked to the call made by the telemarketer

by the fact that the National Health Insurance Marketplace informed Mr. Callier that "the agent

who sold his AM Better health insurance policy was Liza Polanco with a National Producer

number of 18578769."   *Id.*   Some entity or individual made a phone call in the name of Ms.

Cardona, suggesting a very close relationship—a relationship that can plausibly be inferred to be

an agency relationship.   Thus Ms. Polanco had a high degree of "relatedness" to the phone call

in question.

Mr. Callier makes specific allegations against Ms. Cardona as well, but he does

not provide factual support for his allegation of the linkage between her and the January 10

phone call.   *See id.* ¶ 81.   Without such factual support, the Court cannot make a plausible

inference of an agency relationship between Ms. Cardona and whoever made the phone call.

Ms. Polanco and Ms. Cardona cite a case from this judicial district for the

proposition that a "court cannot reasonably infer an agency relationship from the mere fact that

telemarketing calls were made on behalf of [defendants]" without a plaintiff alleging the nature

of the relationship between the telemarketers and those defendants.   *Callier v. SunPath Ltd.*,

No. EP-20-CV-00106-FM, 2020 WL 10285659 at *3 (W.D. Tx. Aug. 10, 2020).   The identity

between the plaintiffs notwithstanding, that case is very different than this one.   In *SunPath*,

Mr. Callier made a conclusory allegation that the defendants, who were providers of car

warranties, were vicariously liable because they were "the direct beneficiaries of the illegal

telemarketing calls."   *Id.* at *1.   Here, however, Mr. Callier's factual allegations suggest that

Ms. Polanco has a much closer relationship to the phone calls than that of a mere "beneficiary."

Rather, Mr. Callier has alleged, with factual support, that Ms. Polanco is listed in a national

database as the individual who bears responsibility for the sale of a particular insurance policy traceable to a particular phone call.

The Court, taking Mr. Callier's assertions as true and making inferences in his favor, concludes that it is highly plausible that Ms. Polanco is responsible for at least one phone call received by Mr. Callier.   As noted, a plaintiff need not "illuminate every corner of defendants' relationships at the pleading stage," but instead must merely "ple[a]d facts sufficient to support a plausibl[e] claim for relief." *Cunningham*, 251 F. Supp. 3d at 1199.   Mr. Callier has done so.   Thus, the Court finds that Mr. Callier has sufficiently pled an agency relationship between whoever made the October 23 phone call and Ms. Polanco.   The Court will continue its analysis to determine whether that phone call violated the law.

Since Mr. Callier has not sufficiently pled an agency relationship between and Ms. Cardona and whoever made the January 13 phone call, the Court will dismiss the claims against Ms. Cardona and Allen Insurance based on the TCPA's proscription of automated equipment.

## 2. Two of Mr. Callier's Claims Against Ms. Cardona Will Survive While Two Will Not.

Having found that Ms. Polanco could be responsible for the October 23 phone call discussed above, the Court now turns to Mr. Callier's claims as they relate to that phone call and determines whether they survive 12(b)(6) analysis—in other words, whether they "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   The Court finds that Mr. Callier's claim that Ms. Polanco violated the TCPA's restriction on the use of automated equipment survives the Motion, as does his state law claim based on the same violation. However, the Court will dismiss Mr. Callier's claims that Ms. Polanco failed to comply with regulations concerning a do-not-call list and that she failed to hold a registration certificate.

13

a. **Mr. Callier Has Adequately Alleged that the Phone Calls Violated the TCPA's Restriction on the Use of Automated Equipment and Texas's Analogous State Law.**

Ms. Cardona and Ms. Polanco argue only that Mr. Callier has not established any relationship between themselves and the allegedly violative phone calls.   They do not argue that the phone calls received by Mr. Callier do not violate the TCPA.   The Court finds that Mr. Callier's Complaint sufficiently alleges that the October 23 phone call, which is linked to Ms. Polanco, violates the TCPA.   The TCPA makes it "unlawful for any person within the United States" (1) to make a call "other than a call made for emergency purposes or made with the prior express consent of [the plaintiff]" (2) using "an artificial or prerecorded voice" (3) "to any telephone number assigned to a . . . cellular telephone service."   47 U.S.C. § 227(b)(1)(A)(iii). It also makes it "unlawful for any person within the United States" (1) to "initiate any telephone call to any residential telephone line" (2) "using an artificial or prerecorded voice" (3) "to deliver a message without the prior express consent of the called party" (4) "unless the call is initiated for emergency purposes . . . ."   47 U.S.C. § 227(b)(1)(B).

Phone calls which violate the TCPA also violate analogous Texas state law.   The Texas Business and Commerce Code creates a right of action under state law for "a person who receives a communication that violates 47 U.S.C. Section 227 [or] a regulation adopted under that provision . . . against the person who originates the communication . . . ."   Tex. Bus. & Com. Code § 305.053(a).   Therefore, the elements of the § 305.053 claim made by Mr. Callier "correspond to the necessary elements for a TCPA claim."   *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622 at *6 (W.D. Tx. May 10, 2021).

Mr. Callier has provided sufficient factual support for his contentions, undisputed by Ms. Polanco and Ms. Cardona, that the October 23 phone call he received violates these

14

portions of the TCPA.    Therefore Mr. Callier's TCPA claim against Ms. Polanco will not be dismissed.

Mr. Callier's claim that Ms. Polanco violated § 305.053 of the Texas Business and Commerce Code is entirely dependent on the validity of his TCPA claim against her.    Since the Court will not dismiss his TCPA claim, it will not dismiss his § 305.053 claim.

### c. Mr. Callier Has Failed to Adequately Plead that Ms. Polanco and Ms. Cardona Violated 47 C.F.F § 64.1200(d), Which Mandates the Use and Maintenance of an Internal Do-Not-Call List.

Mr. Callier alleges that Ms. Cardona and Ms. Polanco failed to create and maintain an internal "do-not-call" list in compliance with 47 C.F.R. § 64.1200(d).    That regulation provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."    47 C.F.R. § 64.1200(d).    The regulation also defines standards that telemarketers must meet to be in compliance.    47 C.F.R. §64.1200(d)(1)–(7).

Ms. Polanco and Ms. Cardona correctly observe that with regard to this claim, Mr. Callier "only makes generalized allegations that he globally directs towards all fourteen defendants."    Mot. 16, ECF No. 68.    Nowhere in his Complaint does Mr. Callier allege with any particularity or factual support that Ms. Cardona and Ms. Polanco, or their companies, do not meet the minimum standards required by § 64.1200(d)(1)–(7).    After disregarding overly generalized assertions against all defendants, *Cobarobio*, 2015 WL 13608102, at \*9, the Court concludes that Mr. Callier has failed to sufficiently allege that Ms. Cardona or Ms. Polanco have violated the regulation, and it will dismiss this claim.

### d. Mr. Callier Does Not Allege With Sufficient Particularity That Ms. Polanco and Ms. Cardona Did Not Have Registration Certificates.

Ms. Polanco and Ms. Cardona also assert that Mr. Callier did not adequately plead a violation of Texas Business and Commerce Code § 302.101.   The Court agrees.

Texas Business and Commerce Code § 302.101 states a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."   Tex. Bus. & Com. Code § 302.101(a).   Mr. Callier mentions the statute only in a general, conclusory allegation that all original defendants collectively violated it by "engag[ing] in continuous and repetitive telephone solicitation of [Mr. Callier] without obtaining a registration certificate from the Office of the Secretary of State." Am. Compl. ¶ 167, ECF No. 33.   As discussed above, the Court disregards, such general allegations lumping together a group of defendants.   *Cobarobio*, 2015 WL 13608102, at \*9. Because Mr. Callier never alleges that Ms. Cardona or Ms. Polanco failed to hold the required registration certificates, the Court will dismiss this claim against them.

## CONCLUSION

Ms. Polanco and Ms. Cardona move to dismiss all claims against them asserted by Mr. Callier in his Amended Complaint.   With regard to Ms. Polanco, Mr. Callier has sufficiently pled his claims based on the TCPA and Texas's analogous rules about automated dialing systems.   He has not sufficiently pled these claims against Ms. Cardona, and so the claims against her and against Allen Insurance based on that portion of the TCPA will be dismissed.   All claims based on 47 C.F.R. § 64.002 and on Texas Business and Commerce Code § 302.101 will also be dismissed.   The only claims remaining are the claims against Ms. Polanco for violating the TCPA as codified at 47 U.S.C. § 227, and Texas Business and Commerce Code § 305.053.

Accordingly, **IT IS HEREBY ORDERED** that Defendants LPV Services, Inc.,

Liza Polanco, Allen Insurance Services, Inc., and Maria Allen Cardona's "Motion to Dismiss" is

**GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that all claims against Maria Allen Cardona and

Allen Insurance Services, Inc. are **DISMISSED WITH PREJUDICE**.

SIGNED this 2nd day of **September 2022**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

17